IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2000 Session

## STATE OF TENNESSEE v. STEVE A. JACKSON

**Direct Appeal from the Criminal Court for Knox County**
**No. 61760     Mary Beth Leibowitz, Judge**

---

**No. E1999-02013-CCA-R3-CD**
**June 29, 2001**

---

A Knox County jury convicted the defendant of aggravated burglary. For this offense the trial court sentenced him to twelve years as a Range III, persistent offender. Through the instant appeal the defendant challenges both the validity of his convictions and his sentence. More specifically, he alleges that the evidence is insufficient to support the jury's verdict of guilty; that the trial court did not appropriately carry out its role as the thirteenth juror; that the copies of prior convictions used to enhance his sentence were not properly certified; and that one of these prior convictions from another state should not have been utilized in sentencing because the State failed to prove that the offense would have been a crime in Tennessee. After reviewing the record, we find that these claims lack merit and, therefore, affirm the lower court's actions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., and JAMES CURWOOD WITT, JR., J., joined.

Mark E. Stephens, District Public Defender; Paula R. Voss, Assistant District Public Defender, Knoxville, Tennessee, for appellant, Steve A. Jackson.

Paul G. Summers, Attorney General & Reporter; R. Stephen Jobe, Assistant Attorney General; Randall E. Nichols, District Attorney General; Steve Garrett, Patti Cristil, Assistant District Attorneys, for appellee, State of Tennessee.

### OPINION

### Factual Background

At approximately five o'clock on the morning of April 15, 1996, the victim Takisha Fitzgerald was preparing to take a shower. Though she had heard tapping outside, she had ignored it. However, she subsequently "felt a presence in [her] house" and went to investigate. Upon re-entering her bedroom, she saw the defendant, who stated, "Oh don't worry. I'm a nice burglar. I'm

just here to rob you. Just go back to bed." Thereafter the defendant looked toward Fitzgerald's stereo and asked, "What's that?"[1] then went to another part of the apartment while the victim stayed in her bedroom. Wearing only a towel, she asked and was granted permission to dress. When the defendant returned to the bedroom, he told the victim to lie down and touched either a button on his pants or his zipper. The victim began protesting, and quite shortly thereafter the police arrived.

The responding officers were Jamie Russell and Walter Ricketts. After arriving at the complex to investigate a disturbance call concerning someone banging on apartment doors, the officers heard a scream coming from the victim's residence. Officer Ricketts announced that they were the police, and the pair entered through the broken doorway. According to Officer Russell the defendant indicated that everything was fine and twice claimed to live there. When the visibly shaken victim emerged from the bedroom, she clarified the situation, and the defendant began telling the police that he was "a good burglar" with no intention of hurting anyone. The defendant was subsequently placed under arrest.

In presenting his case, the defendant called Carmen Clemons, his girlfriend, and Tameka Chandler, another friend. These witnesses recounted that the defendant had begun drinking alcohol at Clemons' birthday party on the Saturday preceding the offense, and Chandler noted that this seemed odd since the defendant usually drank cranberry juice when others had alcohol. Clemons also testified that the defendant typically did not drink alcohol but had done so on that particular weekend.[2] Both witnesses stated that the defendant had become intoxicated by the end of the event early Sunday morning. Clemons added that she had also briefly seen the defendant drunk at around 1:00 a.m. on the following Monday and had not been in contact with him again until after his arrest for the instant offense.

Upon hearing this and additional proof, the jury convicted the defendant as charged of aggravated burglary. As above-noted, the defendant now brings this appeal raising four issues.

## Sufficiency

First the defendant alleges that the evidence presented was insufficient to support his conviction. While acknowledging various elements of aggravated burglary were proven, the defendant avers that the State failed to show that the defendant's entry into the home had been for the purpose of committing a theft.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The

---

[1] A gospel music program was playing, and the defense attempts to suggest that the defendant was not interested in the stereo but was curious about the program.

[2] The crime occurred on a Monday morning.

relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

As aforementioned, the defendant does not challenge the fact that he entered the victim's habitation without her consent; however, he contends that he did not have the intent to commit a theft therein. In support of this allegation, he points to various factors such as his behaving conspicuously by banging on multiple apartment doors prior to coming to Fitzgerald's; not immediately absconding with her belongings; having sisters who lived in the same apartment complex; etc.

Nevertheless, our examination of the evidence before us viewed in the light most favorable to the State leads us to conclude that the defendant's conduct fulfilled beyond a reasonable doubt all of the elements of aggravated burglary. See Tenn. Code Ann. § 39-14-403. While the circumstances of this offense are bizarre, the uncontroverted proof remains that the defendant broke into the victim's residence and told her that he was a nice burglar only there to rob her. He arguably then asked about her stereo and proceeded to steal food from her kitchen. Furthermore, after being surprised by the arrival of the police, the defendant again described himself as a "good burglar." These facts prove sufficient to support the jury's finding the defendant guilty of aggravated burglary.

We next turn more specifically to the defendant's allegation that his intoxication interfered with his ability to form the requisite intent.[3] Generally, "[t]he defense of intoxication negating specific intent is a question for the jury" to determine. State v. Givens, 631 S.W.2d 720, 721 (Tenn. Crim. App. 1982). "[T]here must be ... evidence that the intoxication deprived the accused of the mental capacity to form the requisite specific intent." State v. Bowers, 744 S.W.2d 588, 590 (Tenn. Crim. App. 1987).

In this case there was conflicting testimony. According to Fitzgerald, the defendant had not smelled of alcohol and had not stumbled around the apartment. Officer Russell affirmed that she had not smelled alcohol on him and noted that the defendant had been "coherent enough to try to trick" the police by saying that he lived in the victim's apartment. Officer Rickett's testimony was not quite as clear-cut. While he also stated that the defendant had not smelled of alcohol, one of the reports that he had completed at the time of the offense indicated that the defendant had been intoxicated. On direct-examination, Ricketts indicated that the defendant had not appeared intoxicated but had behaved erratically. On cross-examination, this officer stated that the defendant seemed to have been "intoxicated on something" other than alcohol. Additionally, Clemons and Chandler testified that the defendant had been drinking earlier that weekend. However, both stated that they had not seen him take any drug; Clemons formed her opinion that the defendant was drunk approximately four

_____

[3] The defendant does not press this argument on appeal but does make reference to it in his brief; thus, we will briefly address it.

hours before the crime based upon having briefly seen him from across a room; and Chandler had last seen him over twenty-four hours before the occurrence of this offense.

As we have noted, the question of whether the defendant's alleged intoxication negated his ability to form the necessary intent is for the jury to decide. At the close of the proof, the jurors were given a voluntary intoxication instruction. In the instant case, the jury weighed the conflicting testimony on this subject and rejected this defense. Viewing the evidence in a light most favorable to the state, the jury was justified in making this decision. Therefore, this issue lacks merit.

## Thirteenth Juror

Through his second contention the defendant avers that the trial judge did not properly fulfill her role as the thirteenth juror. Rule 33(f) of the Tennessee Rules of Criminal Procedure provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(f). "This portion of the Rule is the modern equivalent to the 'thirteenth juror rule,' whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict." State v. Blanton, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). The Tennessee Supreme Court has held "that Rule 33(f) imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case." State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). Moreover, the "approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to the imposition of a valid judgment." Id. However, "Rule 33(f) does not require the trial judge to make an explicit statement on the record." Id. "Instead, when the trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." Id.

At the defendant's new trial motion, the trial court went through a lengthy restatement of the proof prior to denying the defendant relief in its role as the thirteenth juror. While the defendant avers that the trial court did not address the weight of the State's proof regarding the elements of the offense, the record indicates otherwise. In fact, the trial court explicitly stated, "indeed, [the defendant] has committed the aggravated burglary." The record reflects the trial judge exercised her role as the thirteenth juror. This issue has no merit.

## Sentencing
### A. Standard of Review

"When reviewing sentencing issues ..., the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. The defendant has the burden of demonstrating "that the sentence is improper." Id.

-4-

## B. Improper Certification of Out of State Convictions

In his initial challenge to the propriety of his sentence, the defendant claims that his sentence as a Range III, persistent offender should be overturned because the sister state convictions relied upon were not properly certified.[4] To support this contention, the defendant asserts that the validity of the out of state convictions should have been proven pursuant to Tennessee Rule of Evidence 902.[5]

However, Tennessee Code Annotated § 40-35-209(b) clearly provides that at sentencing hearings "reliable hearsay including, but not limited to, certified copies of convictions or documents, may be admitted if the opposing party is accorded a fair opportunity to rebut any hearsay evidence so admitted."[6] Tenn. Code Ann. § 40-35-209(b). Furthermore, Tennessee Code Annotated § 40-35-202(a) states that "[t]he original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein." Tenn. Code Ann. § 40-35-202(a).

After reviewing the record, we find proper certification present. With respect to all of the previous offenses, the State provided multiple documents such as incident reports, information, and sentencing forms. In addition, for each of the necessary five prior felonies, a judgment was included bearing the stamp of Dade County Florida and the signature of a deputy clerk. While the defendant correctly notes that every page included is not so stamped, multiple paged documents are numbered as a specific page in a set such as "Page 1 of 4." At least the last page of these sets is marked with the above-described stamp. Under these circumstances the trial court correctly determined that the prior convictions were admissible; therefore, this issue lacks merit. See State v. Jerry W. Rodgers, No. W1999-01443-CCA-R3-CD, 2000 WL 1664263 at *3 (Tenn. Crim. App. at Jackson, July 11, 2000); State v. Delbert G. Mosher, No. 01C01-9807-CC-00320, 1999 WL 820871 at *3 (Tenn. Crim. App. at Nashville, October 13, 1999).

## Prior "Fire bomb" Conviction

---

[4] The requisite five prior felony convictions involved here from Florida were for possession of cocaine; possession of a fire bomb (in this instance a Molotov cocktail); sale of counterfeit cocaine; possession of a firearm by a convicted felon; and aggravated assault.

[5] Subsection (1) of this rule provides that extrinsic proof of authenticity is not needed when "[a] document bear[s] a seal purporting to be that of the State of Tennessee, the United States (or any other state, district, commonwealth, territory ...), or of a political subdivision, department, office, or agency thereof, and a signature purporting to be an attestation or execution." Tenn. R. Evid. 902(1). The following subsection states that no additional authentication is needed for

> [a] document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (1) having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the document is genuine.

Tenn. R. Evid. 902(2).

[6] The defendant makes no claim that he was not afforded a fair opportunity to rebut these prior convictions though he obviously does raise the alleged objections to their admission addressed in this opinion.

During the sentencing hearing, the defense argued that the facts of the actual crime committed by the defendant in Florida would have been a misdemeanor rather than a felony in Tennessee. The defendant argued that a Molotov cocktail did not fall under Tennessee Code Annotated § 39-17-1302(1) but rather under a subsequent misdemeanor provision. On appeal, the defendant instead asserts that the State failed to make its case because the State did not use the elements of the relevant Florida statute to prove that the defendant's behavior would have been a crime in Tennessee. As the defendant has raised this issue for the first time on appeal, he has waived the issue. See Tenn. R. App. P. 36(a).

Nevertheless, we find that the sentencing range is appropriately applied to this defendant. Our legislature has provided that prior out of state felony convictions may be used in classifying someone as a multiple, persistent, or career offender. See Tenn. Code Ann. §§ 40-35-106(5), -107(5), -108(5). The code further indicates: "[i]n the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given." Tenn. Code Ann. § 40-35-107(5).

According to Florida Statutes Annotated § 806.111 "[a]ny person who possesses, manufactures, transports, or disposes of a fire bomb with intent that such firebomb be willfully and unlawfully used to damage by fire or explosion any structure or property is guilty of a felony ...." Fla. Stat. Ann. § 806.111(1). Thereafter, a fire bomb is defined as "a container containing flammable or combustible liquid, or any incendiary chemical mixture or compound having a wick or similar device capable of being ignited or other means capable of causing ignition ...." Fla. Stat. Ann. §806.111(2)(b).

Tennessee Code Annotated § 39-17-1302 states that "[a] person commits an offense who intentionally or knowingly possesses, manufactures, transports, repairs or sells ... [among other things] an explosive or an explosive weapon." Tenn. Code Ann. § 39-17-1302(a)(1). For the purposes of this statute, an explosive weapon is defined as "any explosive, incendiary, or poisonous gas: (A) Bomb; (B) Grenade; (C) Rocket; (D) Mine; or (E) Shell, missile, or projectile that is designed, made or adapted for the purpose of inflicting serious bodily injury, death or substantial property damage." Tenn. Code Ann. § 39-17-1301(3).

Comparing these two crimes to one another, we find that the elements of the Tennessee felony and the Florida crime are sufficiently close to allow use of the Florida offense to boost the defendant's sentence to Range III. Furthermore, we agree with the trial court's conclusion that the defendant's behavior involving a Molotov cocktail would have constituted the Tennessee felony regarding prohibited weapons as described in Tennessee Code Annotated §39-17-1302(1). Thus, this issue also lacks merit.

## Conclusion

For the foregoing reasons we find that none of the defendant's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE