IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 26, 2005

## STATE OF TENNESSEE v. MICHAEL RICARDO MARTIN

**Appeal from the Criminal Court for Davidson County
No. 2002-A-587   Steve Dozier, Judge**

_____

### No. M2004-00455-CCA-R3-CD - Filed June 24, 2005

_____

On March 25, 2002, the defendant, Michael Ricardo Martin, was indicted by the Davidson County Grand Jury on two (2) counts of rape for an incident that occurred on November 27, 2001. A jury trial was held and the defendant was convicted of one (1) count of rape and one (1) count of sexual battery. The trial court sentenced the defendant to concurrent sentences of ten (10) years for the rape conviction and two (2) years for the sexual battery conviction. On appeal the defendant argues that the trial court erred by not granting his motion for judgment of acquittal, by granting the State's motion in limine regarding evidence concerning a prior hymenal injury sustained by the victim and by sentencing the defendant to a ten (10) year effective sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Michael Ricardo Martin.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Derrick Scretchen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

<u>Factual Background</u>

On November 27, 2001, fifteen-year-old T.T.[1] came home from her job at Kroger and went upstairs to her bedroom to sleep. Her fourteen-year-old brother, M.H., was watching television in the living room when he heard a knock on the door. M.H. answered the door and let in Michael Martin, the defendant. The defendant is a former boyfriend of the children's mother. T.T.'s seventeen-year-old (17) sister, S.H., was asleep on the couch. S.H. woke up and saw the defendant. A short time later she woke up again and asked M.H. where the defendant was. M.H. told S.H. that the defendant had gone upstairs to use the bathroom. S.H. went upstairs to see what was taking the defendant so long. When she got upstairs, she turned the lights on in her room and saw the defendant "on top of [T.T.], and his penis was in her anus." S.H. ran downstairs and went next door to a neighbor's house.

Cassandra McCottery is the family's neighbor as well as the best friend of the mother. She called T.T.'s mother at work and told her what had happened. T.T.'s mother, P.H. came home immediately. The defendant was still at P.H.'s home when she arrived. He denied any wrongdoing. P.H. took T.T. and the other children to the hospital to be examined. The defendant followed the family in his own car. The family initially went to Vanderbilt Medical Center and were referred to the Our Kids Center of the Nashville General Hospital.

T.T. underwent an examination by the staff at the Our Kids Center. Lisa Dupree is on the staff at Our Kids Center. She takes a history from the patients seen at the center. She collected background from T.T. the night of her examination. T.T. told Ms. Dupree that "[the defendant's] private went inside her bottom and her private." T.T. also told Ms. Dupree that the defendant did not ejaculate. Julie Rosof-Williams is a nurse practitioner with Our Kids Center. She conducted the physical examination of T.T. She found a fissure in T.T.'s vagina that was fresh and most likely occurred within the twenty-four (24) hours immediately preceding the examination. Ms. Rosof-Williams did not find any medical evidence that T.T. had been anally penetrated, but it is unusual to find any injury after anal penetration. Ms. Rosof-Williams took swabs during the examination, but these swabs did not show any signs of semen.

The defendant was indicted on March 25, 2002 for two counts of rape. Following a jury trial held on February 24 and 25, 2003, the defendant was convicted of one count of rape and one count of sexual battery. The defendant was sentenced to ten (10) years at 100% for the rape involving vaginal penetration and an additional two (2) years at 30% for sexual battery. The sentences were to run concurrently.

---

[1] It is the policy of this Court, to refer to the minor victim and her siblings by their initials.

The defendant filed a pro se motion for post-conviction relief on September 11, 2003, and that motion was later amended by appointed counsel. A motion for new trial had been filed on March 12, 2003, but the trial court had never heard the motion. The trial court allowed the defendant to present his original motion for new trial because it had not been previously heard. Following an evidentiary hearing on January 23, 2004, the trial court denied the defendant's motion. The defendant timely filed a notice of appeal.

## ANALYSIS

The defendant argues three (3) issues on appeal: (1) the trial court erred in not granting the defendant's Motion for Judgment of Acquittal at the conclusion of the State's proof; (2) the trial court erred in preventing testimony as it related to the issue of an old hymenal injury; and (3) the trial court erred in sentencing the defendant.

### Thirteenth Juror Rule

The defendant argues that the trial court erred in not granting his motion for judgment of acquittal at the conclusion of the State's proof. However, upon reviewing the record we have discovered that the defendant did not move for a judgment of acquittal at the conclusion of the State's proof. In fact, the defendant's attorney specifically states that he is not asking for a judgment of acquittal but instead makes a motion with regard to the specifics of the jury charge.

Even though there was no motion for judgment of acquittal, we will nevertheless address this issue on the merits of the trial court's performance as thirteenth juror with regard to the motion for new trial. Rule 33(f) of the Tennessee Rules of Criminal Procedure provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(f). "This portion of the Rule is the modern equivalent to the 'thirteenth juror rule,' whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict." State v. Blanton, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). The Tennessee Supreme Court has held "that Rule 33(f) imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case." State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). Moreover, the "approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to the imposition of a valid judgment." Id. However, "Rule 33(f) does not require the trial judge to make an explicit statement on the record." Id. "Instead, when the trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." Id.

In his brief the defendant's argument consists of a statement that "the trial court failed to exercise it's duty as a 13th juror and dismiss the case, based on the evidence, or lack thereof, and the fact that the State failed to carry it's burden to prove the Appellant guilty beyond a reasonable doubt." We disagree. At the hearing on the motion for new trial, the trial court summarized the proof. The trial court specifically stated that there was sufficient evidence to support a verdict of guilt. As stated above, when a trial judge overrules a motion for new trial that is enough to presume

that he has acted as thirteenth juror.  In this case, the trial court stated on the record that he found the proof to be sufficient.  Therefore, we conclude that the trial judge acted properly as thirteenth juror.

## **Evidentiary Issue**

Prior to trial, the State filed a motion in limine concerning a previous hymenal injury to the victim.  After the State's offer of proof through the testimony of Ms. Rosof-Williams, the trial court granted the State's motion that the evidence of a previous hymenal injury was irrelevant to the case against the defendant.  The trial court made the following ruling on the record:

All right. On the issue concerning the medical exam and the proffer we've heard from Ms. Williams, as I mentioned before our lunch break, and - - [the defendant's attorney] is confirming that his purpose for asking about these old, well-healed hymenal injury (sic) - - how the Witness described it - - is - - his purpose for doing that is for impeaching the victim about making a prior inconsistent statement and not under Four-twelve, which I mentioned before lunch that that wouldn't be an option, because he hadn't filed a motion.

And it wouldn't be the mechanism for introducing it anyway, since Four-twelve deals with prior sexual activity.  The alleged victim here, [T.T.], is, according to the medical information, saying that there is no prior sexual activity.

So, I agree with the State, in terms of - - and I don't think [defendant's attorney] was even arguing this or hasn't argued - - that - - that in any way can you use the impeachment rules and purposes to get around Four-twelve, even though those issues of impeachment address potential Four-twelve areas; that is, if you - - if you looked at Ms. Williams' testimony about it could be consistent with sexual activity, this old, healed injury; it could be consistent with accidental injury.

So, even Ms. Williams is saying it may not be Four-twelve-related. So, that's sort of off the table, the Four-twelve aspect.

When you look at impeachment and the purposes for it, under Six-thirteen, that's only for judging a witness' credibility.

And the Defendant's argument is, well, she says she hadn't been sexually assaulted by my argument is, based on the medical proof, hat she has been sexually assaulted.

But that's not exactly what the Witness is saying.  She can't say if it is or isn't sexually-related or how that injury would've occurred.

So, you know, you can't use that line of questioning of the victim or bring it out through Ms. Williams, to embarrass or somehow paint T.T. as some loose woman, the way the old Four-twelve cases talked about, just to get it in through impeachment.

So, the question is what is it impeaching; what would that statement in the medical report, that she has no prior sexual assaults and nobody's done this to me before - - what's it inconsistent with.

And, from what I've heard thus far, it's not inconsistent with anything. Ms. Williams says she can't say if there's past sexual penetration, that it would be accidental.

So, there's nothing proving that it is an inconsistent statement and - - and thus wouldn't be impeaching anything.

Then you can look at it in terms of just general relevancy, which is what I keep coming back to, and how that Rule defines relevancy - - that Rule being Four-0-one - - is any piece of evidence that has any tendency to prove a fact that's material to the case.

And - - and, even when you look at it under Four-0-one, it doesn't have any bearing or any impact on whether [T.T.] was raped, on or about November twenty-seventh of '0-one, because the Witness says that it - - from a medical standpoint - - occurred at least two weeks prior to the exam.

So, based on the issues and the evidence presented at this time, I don't think it's relevant, I don't think it's impeachment information of [T.T.], and it certainly isn't relevant under Four-twelve.

So, unless something changes, that would be the Court's ruling.


The defendant maintains that this evidence is both relevant, and in the alternative, is available to be used to impeach the victim because she "lied about any prior injury to her hymen . . . ." Turning first to the question of relevance, we acknowledge that evidence must be relevant and probative to an issue at trial in order to be admissible. State v. McCary, 922 S.W.2d 511, 515 (Tenn. 1996); see also Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not

overturn a trial court's determination in this regard in the absence of an abuse of discretion. State v. Williamson, 919 S.W.2d 69, 78-79 (Tenn. Crim. App. 1995); State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

We agree with the trial court that evidence of a previous well-healed hymenal injury is not relevant to the defendant's trial. A previous hymenal injury does not make it more or less likely that the defendant raped the victim on the night in question. We find that there was no abuse of discretion by the trial court.

We also agree with the trial court regarding the admissibility of the evidence for the purposes of impeachment. When the Our Kids Center staff asked the victim if she had been raped before or engaged in sexual intercourse she said no. The nurse practitioner who examined T.T. and found the previous injury testified that the injury could have occurred from an accidental injury as well as sexual contact. The evidence is too ambiguous to show that the victim lied, as the defendant contends. Therefore, we agree with the trial court that this information is not proper for impeachment under Rule 613 of the Tennessee Rules of Evidence.

This issue is without merit.

### Sentencing

The defendant's final argument is that the trial court failed to apply enough weight to mitigating factors found at Tennessee Code Annotated section 40-25-113. He contends that if the trial court had applied any weight to the factors then the trial court should have sentenced the defendant to an eight (8) year sentence so that the defendant would have been eligible for probation.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim.

App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.[2]

The trial court sentenced the defendant to ten (10) years at 100% for his rape conviction and two (2) years for his sexual battery conviction. These sentences were to be served concurrently. The trial court made the following ruling at the conclusion of the sentencing hearing:

In terms of enhancing factors, I do think there are some that are present, those being - - and the initial one, I'm placing minimal weight on, because that being the previous history of criminal convictions, and in addition criminal behavior, i.e., the prior drug usage; but that - - the reason I'm saying I'm placing minimal weight on that is that occurred a number of years ago.

The other one that I think though is present is that the Defendant abused a position of private trust in this particular case, in that he wouldn't've been in the house and wouldn't've been roaming through the house, but for his relationship with the parties there, including these children and the victim in this particular case.

So, I don't think the event that the Jury's found occurred would've occurred, would've been able to be accomplished, but for his position that he had with this particular family, including the victim.

So, that enhancement factor is present; and the Court places more weight on that than the other one.

In terms of the mitigating factors, I don't think the first one that was argued, about causing or threatened serious bodily injury, is present because of - - there's not a serious bodily injury, so there's - - it's not caused; but I don't think, where you appear in someone's bedroom while the victim was asleep, and there was minimal attempts - - I mean, she wasn't able to get him off of her, according to her testimony - - but I don't think that, when you appear under those circumstances and the minimal

_____

[2]We note that the Tennessee Supreme Court has determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury nor admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of Blakely v. Washington,___ U.S. ___ , 124 S. Ct. 2531 (2004), United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), or United States v. FanFan, the case consolidated with Booker, because "the Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." State v. Gomez,___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *27 (Tenn. Apr. 15, 2005).

struggle there was, because of the positioning, him on top of her, that that means that there was not the potential threat of something worse happening than did.

In terms of the unusual circumstances and whether or not he had the intent to violate the law, I would agree that there are unusual circumstances.

And, you know, there was mention in testimony about smelling alcohol and - - but there wasn't much more proof than that, in terms of whether that's what brought this conduct about or not.

But I don't think that rises to the level of preventing Mr. Martin - - which the Jury's here and found that he committed this particular events (sic) - - that that shows that he - - was unlikely that he sustained intent to violate the law.

I mean, if your - - go up the stairs, seek out this child there in the bedroom, and get up on top of her with her pants down, then that (sic) pretty good indication that there was some intent to do something that was against the law.

In terms of the catch-all, I've already weighed in his minimal record. And everyone's supposed to not violate the law. I understand his family support and that he's providing - - has in the past provided child support.

And, if that falls under the catch-all, I think that would be given minimal weight, as well, because, again, that's something that should be done. And, maybe, it's due some minimal weight; and I'll factor that in, as well.

Based on those factors, the Court is going to impose, as to Count One, a ten-year sentence; as to Count Two, a two-year sentence; to run concurrent. There's no basis for these to be run any other way.

That would prevent his eligibility for probation, which I'm - - wouldn't be inclined to grant anyway, because of the serious nature of this offense, i.e., a personal, violent assault, anal intercourse, and a battery - - sexual battery on top of that.

It is clear that the trial court followed the sentencing procedure set out in the sentencing guidelines. Therefore, there is a presumption of correctness for the sentence imposed by the trial court. The defendant was convicted of rape under Tennessee Code Annotated section 39-13-503. Rape is a Class B felony. The sentencing range is eight (8) to twelve (12) years. Sexual battery is found at Tennessee Code Annotated section 39-13-505. It is a Class E felony that has a sentencing range one (1) years to two (2) years for a Range I Standard Offender.

The trial court applied two (2) enhancement factors. Tennessee Code Annotated section 40-35-114(2), the defendant has a previous history of criminal convictions, and Tennessee Code Annotated section 40-35-114(16), the defendant abused a position of private trust. The trial court specifically stated that it placed more weight on enhancement factor (16) to enhance the sentence. The trial court then stated that it was a mitigating factor that the crime occurred under unusual circumstances and "whether or not [the defendant] had the intent to violate the law," which would fall under Tennessee Code Annotated section 40-35-113(3). The trial court also applied the "catch-all" mitigating factor found at Tennessee Code Annotated section 40-35-113(13) for the defendant's support of his family and children. However, the trial court stated that these mitigating factors would be given minimal weight in sentencing.

As stated above, the weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Santiago, 914 S.W.2d at 125. We have reviewed the record in this case and find that the record supports the trial court's determination as to the weight to be afforded the mitigating factors. For this reason, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE