**STATE of Tennessee, Appellee**

v.

**Charles Edward BLANTON aka Buddy Blanton, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 1, 1996.

---

Andrew Jackson Dearing, III, Shelbyville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Kimbra R. Spann, Assistant Attorney General, Criminal Justice Division, Nashville, William Michael McCown, District Attorney General, Gary Jones and Robert Crigler, Asst. District Attorneys General, Shelbyville, for Appellee.

1. Consistent with the policy of this court, we will withhold the identity of young children involved in sexual abuse cases, identifying them by initials

## OPINION

HAYES, Judge.

The appellant, Charles "Buddy" Blanton, appeals from a conviction for aggravated sexual battery entered by the Circuit Court of Bedford County. The appellant raises five issues for our review. First, the appellant argues that the trial court erred in failing to grant his motion for judgment of acquittal at the conclusion of the State's case-in-chief and at his motion for new trial. Second, the appellant contends that the State presented insufficient evidence at trial to obtain a conviction. Third, the appellant asserts that the trial court erred in holding evidence of a prior conviction admissible for impeachment purposes. Fourth, the appellant argues that the trial court improperly failed to instruct the jury on the lesser included offense of child abuse. Fifth, the appellant argues that the trial court improperly ordered his sentence to run consecutive with the sentence for a previous conviction for second degree murder.

After reviewing the record, we affirm the appellant's conviction and sentence.

## I. Factual Background

The record indicates that the appellant was previously married to the sister of the victim's mother. After his divorce, the appellant maintained a relationship with the victim's family. On September 2, 1992, the appellant drove to the home of his former sister-in-law and her family. Jeff Prince, a former neighbor of the family, accompanied the appellant. When the two men arrived at the house, the victim (LW[1]), her younger sister, and her father were outside. LW and her sister asked the appellant to take them to the Dairy Queen across the street from their house; as he had previously done so on numerous occasions. The appellant agreed and obtained the permission of the children's father. The appellant also asked the children's father if he could take LW and her sister fishing. The children's father denied

only. *See State v. Schimpf,* 782 S.W.2d 186, *note* 1 (Tenn.Crim.App.1989).

this request because it was getting late. The appellant then took the children to the Dairy Queen.

The children's father observed the appellant's car leave the Dairy Queen. He noticed that the car was headed in the wrong direction. He was not alarmed, reasoning that the appellant "was just going to drive them down to the dam to throw rocks in the water or whatever and bring them right back." However, when it started getting dark, he became concerned.

As his concern grew, the children's father, now accompanied by his wife, began to look for the two children and the appellant. Since they did not know where the appellant lived, the children's parents drove to numerous homes trying to locate the whereabouts of the appellant. Their search was futile. Finally, the children's mother telephoned her sister, the ex-wife of the appellant, from whom she learned the address of the appellant's mother. The parents then drove to the residence of the appellant's mother.[2]

At the appellant's mother's house, the children's parents noticed a light on inside the house and proceeded to knock at the front door. Through the glass in the door, they observed their youngest daughter crying. When the children were able to get the door opened, LW rushed outside in an agitated state and declared, "Let's go now damn it. Let's go. I hate him. I want to leave." LW proceeded to the family car. The parents noticed that both children were dirty, that LW's shirt was on backwards, and that she was missing her socks. The children's parents then ventured into the house where they found the appellant "passed out" on the couch. The appellant eventually roused himself and asked the children's father if he "wanted a beer." At that point, the parents left the house.

On their way home, LW told her parents that "her Uncle Buddy had taken her clothes off and touched her where she is not supposed to be touched." Instead of driving home, they went to the home of the victim's

paternal grandmother. The children were washed and were provided clean clothes. The parents then took LW to a local hospital for a rape exam. Subsequently, the Bedford County Grand Jury indicted the appellant for one count of rape of a child and one count of aggravated sexual battery. Prior to trial, the State dismissed the aggravated sexual battery charge, and the appellant proceeded to trial on the charge of rape of a child.

At trial, LW, age 7, testified concerning the events that took place while she was in the appellant's care.[3] LW stated that, after taking her and her sister for ice cream, the appellant dropped Jeff Prince off and then drove to a convenience store and purchased "some beer." After he purchased the beer, the appellant drove to "his house." Once at the appellant's house, LW testified that the three of them watched movies while the appellant drank beer. She further stated that, later that evening, the appellant choked her and took off her clothes. When asked what the appellant did after disrobing her, the victim said, "he put his fingers ___." At that point, she hesitated, and the prosecutor told her that she could just point to where the appellant put his fingers. She then pointed to her lower genital area. She also testified that she told her mother what the appellant had done to her.

The victim's mother corroborated LW's testimony. The mother testified that when she and her husband finally found LW, the child was "hysterical." She also stated that her daughter's clothes were muddy and had blood on them. Dr. Pedro Galvez, the physician who examined the victim at the emergency room, testified that the victim had a bruise on her neck. The bruise was located in the same area where the victim testified the appellant had choked her.

At the close of the State's evidence, the appellant moved for a judgment of acquittal. The appellant argued that the State failed to offer sufficient proof of sexual contact. The trial court, however, denied the motion.

---

**2.** The record does not establish whether this was also the appellant's residence.

**3.** The victim's younger sister, who was three years old at the time this offense occurred, was not called to testify at trial.

The appellant then requested that the court preclude the State from introducing evidence of the appellant's conviction for second degree murder. The court ruled that the prosecution could use the conviction for the limited purpose of impeachment should the appellant decide to testify.

During the appellant's case-in-chief, Shirley Louise Lloyd, the appellant's sister, was called as his sole witness. Ms. Lloyd testified that she saw the appellant with the children shortly before the children's parents arrived. Lloyd further testified that she saw the children playing very rough with one another. She stated that, at one point, "the youngest child yelled, 'God damn you'" at the victim. According to Ms. Lloyd, the appellant scolded the child and told her that "little girls didn't talk like that." Ms. Lloyd further testified that the appellant had not been drinking nor did he appear drunk during the time she spent with him that evening. The appellant did not testify, and no other proof was presented.

At the close of the proof, the appellant requested a jury instruction on lesser included offenses. The appellant requested that the court instruct the jury to consider the offenses of sexual battery and child abuse. The trial court denied the requested charge for the offense of sexual battery, finding there was no issue as to the age of the child.[4] As to the request that the jury be instructed on the offense of child abuse, the trial judge found that "there is no evidence of any other purpose than sexual arousal," and therefore, the facts of this case "do not support a charge of child abuse." Upon conclusion of the court's instructions, the jury convicted the appellant of the lesser included offense of aggravated sexual battery and affixed a fine of $25,000.

A sentencing hearing was held on December 16, 1993. Evidence presented at the hearing revealed that the appellant had been recently convicted of second degree murder. The record indicates that the appellant committed the murder while released on bail for the current charge. Following the introduction of evidence, the court applied one mitigating factor, "that the defendant's criminal conduct neither caused nor threatened serious bodily injury." However, the court noted that it would "place very, very little weight on that mitigating factor." As to enhancement factors, the court found that "the defendant has a history of criminal behavior in addition to that necessary to establish the appropriate range," "the defendant ... was in a custodial situation ... and abused a position of private trust," and "the potential of bodily injury was great." At the conclusion of the sentencing hearing, the court sentenced the appellant to eleven years and three months. The sentence was to be served consecutive to the sentence for second degree murder. In the trial court's opinion, Tenn.R.Crim.P. 32(c)(3)(C) mandated consecutive sentences. The appellant now seeks our review of his aggravated sexual battery conviction and the accompanying sentence.

## II. Motion for Judgment of Acquittal

■ The appellant first contends that the trial court erroneously denied his motion for judgment of acquittal at the conclusion of the State's case-in-chief. As the appellant offered evidence in support of his defense rather than rest his case, the appellant waived this issue for purposes of appellate review. *Mathis v. State,* 590 S.W.2d 449, 453 (Tenn. 1979); *see also State v. Smith,* 735 S.W.2d 859, 862 (Tenn.Crim.App.1987); *State v. Campbell,* 904 S.W.2d 608 (Tenn.Crim.App. 1995). Thus, this issue is without merit.

■ The appellant also argues that the trial court erred by dismissing his motion for judgment of acquittal at the close of all the evidence pursuant to Tenn.R.Crim.P. 29, and, in the alternative, by denying his motion for new trial pursuant to Tenn.R.Crim.P. 33. When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence. *State v. Campbell,* 904 S.W.2d 608. To determine whether the evidence is insufficient to sustain the conviction, the trial court must consider "the

---

4. We note that the trial court did instruct the jury as to the lesser offense of aggravated sexual battery.

evidence introduced by both parties, disregard any evidence introduced by the accused that conflicts with the evidence adduced by the State, and afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence.[5] *Id.* (citing *State v. Hall,* 656 S.W.2d 60, 61 (Tenn.Crim.App.1983)). Pursuant to this standard, the trial court properly denied the appellant's motion at the conclusion of all the evidence. Clearly, the State's proof was sufficient to establish the elements of the offense of aggravated sexual battery. This contention is also without merit.

As to the appellant's motion for a new trial under Tenn.R.Crim.P. 33, again we find this issue to be meritless. Rule 33(f) states that "the trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This portion of the Rule is the modern equivalent to the "thirteenth juror rule," whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict.[6] *See generally Curran v. State,* 157 Tenn. 7, 4 S.W.2d 957 (1928).

■■ Our supreme court has held that "Rule 33(f) imposes upon a trial judge the mandatory duty to serve as the thirteenth juror in every criminal case." *State v. Carter,* 896 S.W.2d 119, 122 (Tenn.1995). Moreover, the approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to the imposition of a valid judgment. *Id.* However, when a trial judge overrules a motion for new trial, this court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict. *Id.* In the present case, the trial judge overruled the appellant's motion for new trial, therefore, the appellant is not entitled to relief on this ground.

## III. Sufficiency of the Evidence

Next, the appellant challenges the sufficiency of the evidence to sustain a conviction for aggravated sexual battery. The appellant asserts that the evidence is circumstantial[7] and does not sufficiently show his guilt. Specifically, the appellant argues that "[t]he facts and circumstances in Charles E. Blanton's case as revealed to the jury trial are no more than 'straws in the wind' and are 'not numerous or important enough to weave a net of guilt around him from which he cannot escape.' "

■■ A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn.1994); Tenn.R.App.P. 13(e).

■■ The victim, seven years old at the time of the offense, testified that the appellant held her by the throat and took off most of her clothing. He then touched her in the genital area. Soon after the incident, she told her mother that the appellant "touched her where she is not supposed to be touched." The fact that her mother found

---

5. This standard of review is the same as for a sufficiency of the evidence issue. *See infra* Section III.

6. The "thirteenth juror rule" was abandoned in this state in 1978, *see State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978), but was reinstated with the 1991 promulgation of subsection (f) of Tenn.

R.Crim.P. 33. *See State v. Barone,* 852 S.W.2d 216 (Tenn.1993).

7. We note the appellant's error in his contention that the evidence was circumstantial. The victim testified at trial; this constitutes direct evidence.

her with a sock missing and her blouse on backwards corroborated the victim's testimony. The jury could have properly inferred that the blood on her blouse resulted from sexual contact. Furthermore, Dr. Galvez testified that the victim had a bruise on her neck in the same area where the appellant allegedly grabbed her. From these facts, any rational trier of fact could have found the appellant guilty of aggravated sexual battery.

## IV. Admissibility of Prior Convictions

 Prior to trial, the State provided the appellant with notice of their intent to use the appellant's two prior convictions for impeachment purposes. These convictions include a 1990 conviction for theft of property and a 1993 conviction for second degree murder.[8] At the close of the State's case-in-chief, the trial court held a hearing, pursuant to Tenn.R.Evid. 609(a), to determine the admissibility of these two convictions. After hearing arguments as to the admissibility of the second degree murder conviction, the trial judge ruled that the convictions were admissible for impeachment purposes.[9] As a result of this ruling, the appellant chose not to testify, but proceeded to present a defense.[10] The appellant now challenges the trial court's ruling, claiming that his prior conviction for second degree murder should not be admitted as it is similar to the crime of aggravated rape, and it is not probative as to his credibility.

Tenn.R.Evid. 609 permits the accused's credibility to be impeached by prior criminal convictions on cross-examination if certain conditions and procedures are satisfied. Pursuant to Rule 609, the conviction must be (1) for a crime punishable by incarceration in excess of one year, or (2) for a crime involving dishonesty or false statement. Tenn. R.Evid. 609(a)(2). However, the conviction is not admissible if more than ten years has elapsed between the date of release from confinement and commencement of the present action. Tenn.R.Evid. 609(b). The rule also mandates that the State give reasonable written notice prior to trial of the particular convictions it intends to use to impeach the accused. Tenn.R.Evid. 609(a)(3). Finally, before permitting the use of a prior conviction, the trial court must find that the probative value of the conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn.R.Evid. 609(a)(3).

In the present case, the State provided the appellant with notice of its intended use of the appellant's convictions prior to trial. Both convictions were punishable by imprisonment in excess of one year, and both convictions were within the ten year time limit. Thus, the only question for our review is whether the trial court properly balanced the probative value of the convictions against their prejudicial effect.

 Before the trial court rules on the probative value of the prior convictions, the court must first assess the similarity between the crime on trial and the crime underlying the impeaching conviction. *State v. Farmer*, 841 S.W.2d 837, 839 (Tenn.Crim.App.1992); *State v. Finch*, No. 02C01–9309–CC–00224, 1995 WL 334350 (Tenn.Crim.App. at Jackson, June 7, 1995). The trial court must then analyze the relevance the impeaching conviction has to the issue of credibility. *Id.*

 At the 609 hearing, the trial judge, after a lengthy discussion, stated with regard to the admissibility of the murder conviction, that:

[A]lthough it is a type of assaultive offense, child rape, it is of great dissimilarity than the intentional taking of life. Since it is an

---

**8.** The offense of second degree murder was committed while the appellant was on bail for the instant offense.

**9.** At the hearing, neither the appellant nor the State made any argument regarding the 1990 theft conviction. The admissibility of this conviction is not at issue in this appeal.

**10.** Even though the appellant did not take the witness stand due to this ruling, this issue can

nonetheless be raised properly on appeal. Advisory Commission Comments, Tenn.R.Evid. 609. This rule rejects federal authority holding that the accused must testify and be subject to cross-examination about the prior conviction before being permitted to appeal the decision allowing the conviction to be used. *See Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984).

infraction of the higher degrees against society, the Court feels that the probative value in this case outweighs the prejudicial effect and will allow the State to use that for purposes of impeachment only.

A ruling under Rule 609 will not be reversed unless the trial court has abused its discretion. *Finch,* No. 02C01–9309–CC–00224 (citations omitted). From our review of the record, we do not find that the trial court abused its discretion.

 We conclude that the crime of aggravated sexual battery is not so similar to the crime of second degree murder as to compel a finding of prejudice. Furthermore, this court has held that "felonies of a violent nature reflect on the moral character of a witness"; and, therefore, "this evidence is not usually without probative value." *State v. Strong,* No. 88–82–III, 1989 WL 34942 (Tenn.Crim.App. at Nashville, April 12, 1989). Accordingly, we conclude that the trial court did not err in finding the appellant's conviction for second degree murder more probative as to credibility than prejudicial as to a substantive issue. *See, e.g., State v. Wiggins,* 729 S.W.2d 291, 294 (Tenn.Crim.App.1987) (holding that convictions for voluntary manslaughter and possession of a controlled substance for resale admissible for impeachment purposes in trial for aggravated kidnapping and aggravated rape); *State v. Ratliff,* 673 S.W.2d 884, 885 (Tenn.Crim.App. 1984) (holding that convictions for escape and assault with intent to commit second degree murder admissible for impeachment purposes in trial for concealing stolen property); *State v. Lakins,* No. 32, 1991 WL 84947 (Tenn.Crim.App. at Knoxville, May 24, 1991) (holding that conviction for second degree murder admissible for impeachment purposes in trial for aggravated assault); *State v. Reagan,* No. 3, 1989 WL 100230 (Tenn. Crim.App. at Jackson, August 30, 1989) (holding that conviction for aggravated assault admissible for impeachment purposes in trial for receiving stolen property); *Strong,* No. 88–82–III (holding conviction for malicious shooting admissible for impeachment purposes in trial for assault with intent to commit first degree murder and assault with intent to commit rape). Thus, the trial court properly determined that evidence of the appellant's two prior convictions would be admissible for impeachment purposes. This issue is, therefore, without merit.

## V. Failure to Instruct on Lesser Included Offense of Child Abuse

The appellant next argues that the trial court's jury charge constituted reversible error. Specifically, the appellant contends that the trial court should have charged the jury on the lesser included offense of child abuse. We disagree.

 Error cannot be predicated on a trial court's failure to charge a lesser included offense when the evidence clearly demonstrates that the defendant is guilty of a greater offense. *State v. Stephenson,* 878 S.W.2d 530, 550 (Tenn.1994); *State v. Boyd,* 797 S.W.2d 589, 593 (Tenn.1990); *State v. King,* 718 S.W.2d 241, 245 (Tenn.1986). To prove a case of aggravated sexual battery, the State must show (1) that the victim is less than thirteen years of age and (2) that the defendant had unlawful sexual contact with the victim. Tenn.Code Ann. § 39–13–504 (1991). "Sexual contact" is the intentional touching of the victim's intimate parts,[11] if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. Tenn.Code Ann. § 39–13–501(6) (1991). In the case before us, the record clearly shows that the appellant committed aggravated sexual battery. The victim was seven years old at the time of the offense, which meets the statutory requirement to show aggravation. *See* Tenn. Code Ann. § 39–13–504(a)(4) (1991). Moreover, the victim testified that the appellant held her by the neck and removed her pants, and that he touched her "where she is not supposed to be touched," i.e., her lower genital area. Thus, the trial court did not err in failing to instruct the jury on the lesser included offense of child abuse.

---

**11.** " 'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn.Code Ann. § 39–13–501(2) (1991).

## VI. Consecutive Sentencing

In his final issue, the appellant argues that the trial court improperly interpreted Tenn. R.Crim.P. 32(c)(3)(C) as mandating consecutive sentences. Rule 32(c)(3) provides:

(3) Mandatory Consecutive Sentences.— Where a defendant is convicted of multiple offenses from one trial or where the defendant has additional sentences not yet fully served as the result of the convictions in the same or other court and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:

(A) To a sentence for a felony committed while on parole for a felony;

(B) To a sentence for escape or for a felony committed while on escape;

(C) To a sentence for a felony where the defendant was *released on bail* and the defendant is *convicted of both offenses*; and

(D) Any other ground provided by law.

(emphasis added). Although the appellant was not on bail when the instant offense was committed, the trial judge reasoned that:

[A] strict reading of that statute [32(c)(3)(C) ] would mean that one conviction has to follow the other, that the first case should be tried first if there is a conviction and then there is a conviction on the second case. But that would lead to ludicrous results . . . .

I believe what the Supreme Court intended is that if you are out on bail and you commit another offense and you are convicted of both offenses, those sentences shall run consecutive.

The appellant contends that, because he was not on bail at the time he committed the instant offense, Tenn.R.Crim.P. 32(c)(3)(C) does not apply.[12] We disagree and affirm the decision of the trial court.

After a review of Tenn.R.Crim.P. 32(c)(3)(C), we conclude that the language does not specify that there *must* be a conviction for the earlier offense and *then* a conviction for the latter one. Thus, we hold that it is irrelevant whether the conviction for the first offense, releasing the defendant on bail, occurs prior to the conviction for the second offense, occurring while the defendant is on bail. *Contra, State v. Hyder*, No. 1040, 1986 WL 3174 (Tenn.Crim.App. at Knoxville, March 13, 1986), *perm. to app. denied, concur results only*, (Tenn. Aug. 11, 1986) (holding that since the defendant was not on bail at the time of the instant offense Tenn. R.Crim.P. 32(c)(3)(C) was not applicable). In other words, it is immaterial whether sentence one is consecutive to sentence two, or vice versa, as the sentences are consecutive in either case. Accordingly, we conclude that the trial court properly imposed consecutive sentences when the appellant was first convicted of the offense committed while on bail and then convicted of the offense which released him on bail.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed.

SCOTT, J., not participating.

TIPTON, J., concurs.

---

12. The record shows that the appellant first committed the instant offense, then, while on bail for this offense, committed the offense that led to his conviction for second degree murder.