IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2005

## STATE OF TENNESSEE v. WILLIAM YATES CRAMER

**Appeal from the Circuit Court for Lake County**
**No. 04-CR-8541     R. Lee Moore, Jr., Judge**

_____

**No. W2004-02288-CCA-R3-CD  - Filed July 28, 2005**

_____

The defendant, William Yates Cramer, was convicted by a Lake County Circuit Court jury of driving under the influence of an intoxicant (DUI), second offense, a Class A misdemeanor.  The trial court imposed a sentence of eleven months, twenty-nine days, with probation after ninety days in jail and ordered the defendant to pay a fine of $600.00.  On appeal, the defendant contends that (1) the evidence is insufficient to support his conviction, (2) the trial court erred by allowing the state to use his prior conviction for aggravated assault to impeach his testimony, and (3) his sentence of confinement violates Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004).  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Jim W. Horner, District Public Defender, and Patrick R. McGill (on appeal) and James E. Lanier (at trial), Assistant Public Defenders, for the appellant, William Yates Cramer.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen Waddell Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's arrest for driving under the influence of an intoxicant. Ridgely Police Officer David Callens testified that while he was patrolling during the early morning hours on November 26, 2003, he saw the passenger side door of the defendant's truck open and someone throw a brown bag onto the side of the road as the truck drove past him.  He said that he followed the truck for a couple of blocks and that the defendant was driving "all over the road," weaving from one lane to another.  He said that he stopped the defendant, who had two female passengers riding in the cab with him, but that one of the passengers quickly got out and disappeared

behind a building while he was using the radio. He said he was unable to pursue her and watch the other two individuals at the same time. He said that when he spoke to the remaining passenger, she did not appear intoxicated, but the defendant smelled strongly of alcohol and had slurred speech and glassy eyes. He said that he asked the defendant to get out of the truck and that the defendant swayed when he walked "like he was under the influence." He said the defendant also walked with a slight limp. He said that on the console inside the defendant's truck he found a twelve-ounce bottle of Bud Light, which was three-quarters full and still cold. He said that he asked the defendant to take a field sobriety test but that the defendant said he was unable to do so because he had a bad leg. He said that he read the information on the implied consent form to the defendant and asked him if he would submit to a breathalyzer test but that the defendant refused to take the test or sign the form. He said he explained to the defendant that refusing to take the test meant he could lose his driver's license. He said the defendant became very angry, accused him of taking away his livelihood, and threatened to "get" him when the defendant was released. He said he returned to the location and recovered the brown bag thrown from the truck. He said it contained five empty twelve-ounce bottles of Bud Light.

On cross-examination, Officer Callens acknowledged that there was no oncoming traffic when he stopped the defendant and that no dividing lines were painted on that section of road. He admitted discarding the beer bottles discovered in the bag and the bottle found in the truck. He said that he did not stop the truck immediately after he saw the bag thrown out of it because he wanted to investigate further and that he did not know the defendant or the passengers. He admitted that he did not know who was drinking the beer found in the truck and that he did not ask.

Ridgely Police Officer Kenny Lee testified that he provided backup for Officer Callen when he stopped the defendant and that the defendant was leaning on the bed of his truck when he arrived. He said that he was present when Officer Callen asked the defendant to perform field sobriety tests and that he heard the defendant say he had a bad leg. He said that he did not recall the defendant's refusing the tests but that he was not aware of any tests being performed. He said that the defendant was swaying from side to side and smelled of alcohol. He said he did not see the defendant walk but noticed the defendant's speech was slurred. He said that he saw an open container of Bud Light in the truck's console and that he heard the defendant refuse to take the breathalyzer test.

Delores Hodoe testified that she was one of the passengers in the defendant's truck on the morning he was arrested on the DUI charge. She said she and the defendant left the Riverfront Bar in Tiptonville and drove to Ridgely together. She said that the defendant's driving ability appeared to be "all right" and that she was not concerned for her safety. She said that she did not see the defendant's truck drift toward the center or run off the road and that the bottle of Bud Light beer in the truck was hers. She said she did not know how much alcohol the defendant had to drink that night. She said they picked up a girl named Myrtle Lee McCrite on the way to Ridgely. She said that she stayed for a while after the police stopped the defendant but that she left for her father's house shortly thereafter because the officers told her she was free to leave.

On cross-examination, Ms. Hodoe acknowledged that she and the defendant were at the Riverfront Bar at the same time and said that when the bar closed at midnight, she asked the defendant to give her a ride to Ridgely. She acknowledged that she and the defendant were friends and that she did not notice how much the defendant drank that night.

Myrtle McCrite testified that she was a passenger in the defendant's truck when he was stopped by the police officer in Ridgely. She said that the defendant picked her up because she knew Ms. Hodoe. She said that she was seated next to the passenger door and that she did not see anyone throw anything from the truck. She said that the defendant's driving did not concern her and that she noticed nothing out of the ordinary about it. She said that when she got into the truck, Ms. Hodoe said, "I hope they don't stop us or nothing." She said that she asked why the police would stop them and that Ms. Hodoe responded she did not know.

On cross-examination, Ms. McCrite testified that Ms. Hodoe's comment about being stopped was "just conversation" and that she said it because she saw the police officer. She admitted that she had previously been convicted of two drug-related offenses and of passing worthless checks. She acknowledged that she was in the truck for only a couple of minutes before it was stopped by the police officer and that she did not know what the defendant was doing or drinking before they picked her up.

The defendant testified that he drank no more than two beers during the two hours he was at the Riverfront Bar. He said that he was not with Ms. Hodoe at the bar but that she asked him for a ride to Ridgely and he agreed to drive her. He said he did not believe he was under the influence of alcohol that night and was not concerned about his driving ability. He said that he did not swerve while driving his truck the night he was arrested and that no one threw anything from it. He stated that the bag of beer bottles claimed to have been recovered by the police did not exist and that Ms. Hodoe was drinking beer from a can. He said that he sustained a leg injury which caused him to limp and that Officer Callen asked him about it. He denied that Officer Callen asked him to perform any field sobriety tests and that he refused to perform such tests. He said he refused to cooperate or agree to take the breathalyzer test because he was upset by the way Officer Callen treated him. He said that he was a construction worker and that it was difficult to get a job without a driver's license. He admitted that his criminal record contained a 1995 conviction for aggravated assault.

On cross-examination, the defendant testified that he knew Ms. Hodoe from the Riverfront Bar and that he went to the bar a couple of times a month. He admitted that he drank one or two beers in an hour or so and that he left because the bar closed at midnight. He denied that he knew Ms. McCrite and said that he picked her up because Ms. Hodoe asked him to give her a ride. He said Officer Callen mentioned something about throwing bottles and swerving but never asked him if he had been drinking. He denied that he swerved or that anyone threw bottles from his truck.

# I.  SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for the DUI offense.  He argues that the facts do not prove he was under the influence of alcohol at the time the officer stopped him and that the only evidence to support a contrary finding is the opinion of the two officers at the scene.  He asserts that he did not perform any field sobriety tests and refused to take the breathalyzer test.  The state contends that the evidence is sufficient to convict him.  We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state.  See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions about witness credibility were resolved by the jury.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee Code Annotated section 55-10-401 states in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system
> . . . .

We conclude that the evidence, taken in a light most favorable to the state, was sufficient for a rational juror to find beyond a reasonable doubt that the defendant was driving while under the influence of an intoxicant.  Both officers testified that they detected an odor of alcohol on the defendant, that he was swaying from side to side, and that his speech was slurred.  Both officers also testified that they saw an open bottle of Bud Light in the console of the truck.  Officer Callen testified that the defendant's eyes were glassy and that he was "all over the road" while driving, weaving from one lane to another.  Officer Callen recovered the brown bag thrown from the defendant's truck and testified that it contained five empty beer bottles.  The record contains no proof of blood alcohol test results because the defendant refused to perform the breathalyzer and field sobriety tests.  However, the officers' testimony justified the jury's attributing the defendant's imperfect driving skills and his impaired physical state to being under the influence of alcohol.  The defendant is not entitled to relief on this issue.

## II.  ADMISSIBILITY OF PRIOR CONVICTION

The defendant contends that the trial court erred by allowing the state to use the defendant's prior conviction for aggravated assault to impeach his testimony at trial.  He concedes that the conviction was for a felony, that less than ten years had elapsed between the date he was released from confinement and the commencement of the prosecution, and that the state gave reasonable written notice before the trial that it intended to use the conviction to impeach him.  Rather, he argues that the probative value of the aggravated assault conviction on the issue of credibility does not outweigh its unfair prejudicial effect on the issue whether the defendant drove while intoxicated. The state contends that the trial court did not abuse its discretion by admitting the evidence.

The record reflects that before trial, the state provided written notice of its intent to impeach the defendant with his 1995 conviction for aggravated assault.  At a pretrial hearing, the trial court ruled that the aggravated assault conviction was admissible for this purpose, noting that felonies of a violent nature reflect on the moral character of the witness and that this type of evidence is not usually without probative value respecting credibility, citing State v. Blanton, 926 S.W.2d 953 (Tenn. Crim. App. 1996).  The trial court also found that the prejudicial effect would be slight, based on the lack of similarity in the crimes.

Rule 609 permits the state to impeach a defendant with his or her prior convictions if certain conditions are met: The prior conviction must be for a misdemeanor involving "dishonesty or false statement" or for a felony.  Tenn. R. Evid. 609(a)(2); State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). Less than ten years must have elapsed between the defendant's release from confinement for the prior conviction and the commencing of the present prosecution.  Tenn. R. Evid. 609(b). Additionally, the state must give reasonable pretrial notice of the impeaching convictions.  Tenn. R. Evid. 609(a)(3).  Finally, the trial court must find that the impeaching conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.  Id.  It is this final condition that is at issue in this case.

In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect, a trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility.  Mixon, 983 S.W.2d at 674; State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992).  If "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980).  The trial court's decision to admit a prior conviction under Rule 609 will not be reversed on appeal unless the trial court abused its discretion.  Blanton, 926 S.W.2d at 960.

We believe that the trial court correctly concluded the evidence was relevant to the defendant's credibility.  Rule 609 contemplates that the commission of a felony bears on the credibility of the witness.  See, e.g., Blanton, 926 S.W.2d at 960 (concluding the trial court did not err in finding the appellant's conviction for second degree murder more probative than prejudicial

as to credibility in trial for aggravated rape). The trial court also found that the prejudicial effect would be slight, based on the lack of similarity in the crime of aggravated assault and driving under the influence of an intoxicant. We agree. We conclude that the trial court did not err by finding that the probative value of the prior conviction outweighed its prejudicial effect and that it did not abuse its discretion by allowing the state to use the defendant's prior conviction for impeachment purposes.

### III. SENTENCING

The defendant contends that the trial court erred in sentencing him to ninety days confinement in light of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). He argues that even though previous decisions of this court have held Blakely does not apply to misdemeanor sentencing, this court should make an exception when the charge is DUI, second offense. The state contends that the sentence imposed is proper.

The Tennessee Supreme Court recently held that failure to raise Blakely in the trial court waives the issue and that, in any event, Tennessee's sentencing procedures do not violate the Sixth Amendment right to trial by jury as described in Blakely and United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005). See State v. Edwin Gomez and Jonathan S. Londono, No. M2002-01209-SC-R11-CD, Davidson County, ___ S.W.3d ___ (Tenn. Apr. 15, 2005). Accordingly, the defendant has no relief under Blakely.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE