IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 11, 2005

## STATE OF TENNESSEE v. JAMES AUSTIN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-04749     John P. Colton, Jr., Judge**

———————

**No. W2004-00510-CCA-R3-CD  - Filed August 5, 2005**

———————

The defendant appeals his conviction for second degree murder on the grounds of (1) insufficient evidence to support the verdict and (2)  the sentence, pursuant to <u>Blakely</u> issues.  After review, we find sufficient evidence to support the verdict.  The Tennessee sentencing structure is not impacted by <u>Blakely</u>, therefore, the sentence is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Charles W. Gilchrist, Jr. and Lance Chism, Memphis, Tennessee, for the appellant, James Austin.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook and Stacy McEndree, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant, James Austin, was indicted along with co-defendants, Carlos Summers and Parnell Austin, for the first degree murder of Dedrick Jennings.  The defendant was tried separately and convicted by a jury of second degree murder, a Class A felony.  The defendant was sentenced as a Range I, standard offender to twenty-two years, to be served 100% as a violent offender.  He appeals his conviction upon the grounds of (1)  insufficient evidence to support the conviction and (2) the sentence, due to alleged inappropriate application of enhancement factors in light of <u>Blakely</u>.

### Factual Background

On September 18, 1999, Myka Warmsley hosted a birthday party at her apartment at 1337 Turkey Run in Memphis.  The party began early in the day and culminated late in the evening with the shooting death of Dedrick Jennings by the defendant, James Austin.

The State presented five witnesses who were present at the party when the killing took place. Bryant Jennings, a cousin of the victim, had played cards at the party with the victim, Terrence Hill, and the defendant. Jennings and the victim were partners against Hill and the defendant. "Trash talking" ensued between the two teams and escalated between the victim and the defendant to the point of "fighting words" being exchanged. The defendant began insisting that Hill take him home. Eventually, Hill and the defendant left the party. Jennings stated that the defendant returned in the company of his brother, Parnell Austin, and Carlos Summers. Jennings stated that all three men were carrying guns. Jennings started calling out the victim's name to warn him, then ran upstairs to hide. Jennings heard the host repeating the words, "don't do that." After hearing a gunshot, Jennings ran back downstairs. Outside on the patio, he found the victim lying on the ground, bleeding from the mouth. Jennings stated the victim had consumed alcohol and used marijuana at the party. To Jennings' knowledge, the victim was not armed.

Ms. Danielle Branch testified that she arrived at the party between 5:00 and 5:30 p.m. Later in the evening, she saw three men enter the apartment with guns. The party guests started running. The defendant said, "where's that nigger at?" The victim ran from the kitchen and bumped the defendant, who was in the entrance door. She said the victim fell outside and landed on his back. The defendant was over the victim, and she observed the defendant shoot the victim. After the shooting, she saw Carlos Summers kick the victim and spit on him. The defendant and his two companions then left the scene in a gold Cadillac. Branch said she had not seen the victim with a weapon.

Myka Warmsley, the hostess of the party, estimated that between thirty and fifty people attended. She stated that the defendant seemed "kind of upset" when he left the party. Ms. Warmsley was in the kitchen, preparing the victim a plate of food, when the defendant and his companions returned. She saw that the defendant, Carlos Summers, and Parnell Austin each had a gun. She tried to calm Carlos Summers and then intervened when Parnell Austin started upstairs. The defendant had been by the entrance door. Ms. Warmsley heard a gunshot and ran to the door, where she saw a body lying outside. She bolted upstairs, called the police, and looked out the window. She witnessed Carlos Summers hitting and kicking the victim. The defendant and his companions then left the scene in a gold Cadillac.

Ms. Khamesa Jefferson was grilling food on the patio at Ms. Warmsley's apartment when the defendant, his brother, and Carlos Summers came to the party. She said two of the three co-defendants had guns, but she could not recall which individuals were armed. She heard them announce angrily, "where's that nigger at?" and "where's that m-f at?" Ms. Jefferson witnessed the victim run out the door with the defendant running behind him. She heard a shot and then saw the victim lying on the ground with the defendant standing over him. She also witnessed Carlos Summers pistol whip, stomp, and spit on the reclining victim. The defendant and his companions then left the scene in a gold Cadillac.

Andrea Phipps was eating when the disturbance erupted at Ms. Warmsley's party. She heard someone shout that "he has a gun!" When she turned, she saw a person standing, with a gun in his

hand, who asked, "where's that nigger at?" Ms. Phipps ran outside and hid behind a tree. She stated that she heard two gunshots while she was outside. She saw a gold Cadillac pull away and went to the scene where the victim was lying on the ground, struggling to breathe before he died.

Despite an exhaustive search, police officers responding to the crime scene were unable to find a weapon or ammunition casings. Steve Scott, a TBI agent, was qualified as a firearms identification expert. He identified a hole on the left back of the victim's shirt as the entry hole, based on the presence of powder burns. Tests performed by Agent Scott, with a .38 caliber gun, indicated that the gunshot was at close range, in a bracket from four to twenty-four inches away.

Sergeant James Fitzpatrick of the Memphis Police Department, testified to interviewing the defendant on September 19, 1999. The defendant gave two separate and inconsistent statements. In the first interview, the defendant admitted that he was responsible for shooting the victim. The defendant related that the victim began making threats toward him during their card game. The defendant stated that he was armed with a revolver at the time, but left the party. He said he later returned to apologize to the victim. The defendant's brother, Parnell, had also arrived at the party. Guests saw the defendant's gun handle in his pocket and panicked. The victim then tackled the defendant and started struggling to take the defendant's weapon. The defendant said he snatched the weapon and accidentally shot the victim. He stated that he left the gun, a chrome .38 with a brown handle, on the ground at the scene. He then left with his brother.

The defendant's second statement was made approximately an hour later. In the second statement, the defendant said that after leaving the party, he had met with the co-defendants, and the three of them decided to go back and scare the victim. All three co-defendants were armed, and the defendant was displaying his weapon when he entered the apartment. The defendant stated he stepped outside the apartment, and the victim grabbed him and started wrestling, trying to take the weapon. The defendant broke free and shot at the victim. The three co-defendants left and met one "Lorenzo," who was given the defendant's revolver. The defendant stated that the weapon belonged to his father.

Dr. O. C. Smith, the Shelby County Medical Examiner, testified as a forensic pathology expert concerning the autopsy he performed on the victim. The bullet entrance wound was on the left side of the victim's back, and an exit wound was on the left side of the victim's chest. The victim had an abrasion on his left knee, abrasions and lacerations on his face, and a bruise on the left back of his head. Injuries to the victim's face were consistent with being struck by a gun or some other instrument with straight edges. The victim's blood alcohol level was .13, and his urine was positive for marijuana. Dr. Smith stated that the cause of death was a gunshot wound to the back and the manner of death was by homicide.

The defense presented two witnesses, in addition to the defendant's testimony. Kirestin McIntyre testified that after the defendant and his companions returned to the party with guns, she talked with the defendant and told him to leave. The defendant had a gun in his hand. Ms. McIntyre felt a "bum-rush" at her back and saw the defendant and victim stumble out the door. She saw the

defendant reach over and shoot the victim in the back while the defendant was falling backwards. She said the victim was not reaching for the defendant's gun.

Kabious Johnson had gone to the party with the defendant and Terrence Hill. He saw nothing amiss during the card game, but the defendant did insist on leaving. Johnson was outside the apartment when the three co-defendants returned. He heard a commotion inside the apartment, then saw bodies emerge, and recognized the defendant. Two people fell down, and Johnson heard a shot fired. Johnson left the scene immediately. He later found out the victim had died and relayed this information to Parnell Austin.

In his testimony at trial, the defendant said that the victim threatened him during their card game. He said that, after leaving the party, he encountered the two co-defendants and told them of his experience with the victim. The three talked about scaring the victim as they returned to the party, each one armed. The defendant said he called out for the victim and had his .38 revolver in his hand. The defendant said that he was turning to leave when the victim rushed him and that he shot the victim accidentally. The co-defendants left and later learned that the victim had died. The defendant gave his weapon to "Lorenzo" before turning himself over to the police.

## Sufficiency of Evidence

The defendant phrases his first issue in the following manner: "Whether the trial court erred by not granting a motion for judgment of acquittal after the State's proof and at the end of the trial and not overturning verdict as thirteenth juror based on insufficiency of the evidence?"

The standard of review for motions on judgment of acquittal is the same as when analyzing the sufficiency of the convicting evidence. See State v. Blanton, 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996). Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996); State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984).

A conviction for second degree murder requires proof that the defendant unlawfully and knowingly killed another. See Tenn. Code Ann. § 39-13-201, -210(a)(1). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-302(b).

The defendant contends that he did not act "knowingly" and that the evidence would only support reckless or negligent homicide. The defendant testified that his shooting of the victim was accidental and due to a struggle with the victim.

-4-

The evidence established that the defendant became angry with the victim and left the party after they had a heated verbal encounter. The defendant returned with two companions, all brandishing weapons and calling out for the victim in insulting language. There was no evidence adduced that the victim was armed. There was evidence that the victim attempted to escape. Danielle Branch testified that the victim fell during his escape attempt and that the defendant leaned over and shot the victim. A defense witness, Kirestin McIntyre, observed the defendant reach over and shoot the victim. Ms. McIntyre also stated that the victim was not attempting to reach for the defendant's weapon. The defendant's immediate disposal of the murder weapon was not consistent with his claim of an accidental or negligent killing. The jury rejected the defendant's contention that the shooting was accidental and accredited the State's witnesses. This is the jury's prerogative. We conclude that the evidence is sufficient to justify a rational jury to find beyond a reasonable doubt that the defendant knowingly killed the victim.

## Sentencing

The defendant, in his second issue, challenges the trial court's application of certain enhancement factors in light of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Our supreme court addressed the issues presented by the defendant in State v. Gomez and Londono, No. M2002-01209-SC-R11-CD (Tenn. Apr. 15, 2005). The court held that the Tennessee Criminal Sentencing Reform Act's sentencing procedure does not violate the Sixth Amendment right to jury trial and that Blakely claims thereunder are foreclosed.

The defendant raised no other objections to the sentencing procedure nor presented any other sentencing issue for review. Accordingly, we conclude that, in light of Gomez and in comformity thereto, this issue is without merit.

## Conclusion

For the foregoing reasons, we affirm the defendant's conviction for second degree murder and the sentence as imposed.

_____
JOHN EVERETT WILLIAMS, JUDGE