IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 30, 2010 at Knoxville

## STATE OF TENNESSEE v. GEORGE WASHINGTON MATTHEWS

**Appeal from the Criminal Court for Davidson County**
**No. 2004-D-3131     Seth Norman, Judge**

_____

**No. M2009-00692-CCA-R3-CD - Filed August 13, 2010**

_____

The Defendant, George Washington Matthews, was convicted by a Davidson County Criminal Court jury of facilitation of the sale of 0.5 grams or more of cocaine, a Class C felony, and possession of drug paraphernalia, a Class A misdemeanor. The Defendant was sentenced as a career offender and received an effective sentence of fifteen years to serve in the Tennessee Department of Correction. In this appeal as of right, the Defendant contends that (1) the trial court erred in denying his motion to dismiss his case; (2) the trial court erred in approving the jury's verdict as the thirteenth juror; (3) the evidence was insufficient to sustain his conviction of facilitation of the sale of 0.5 grams or more of cocaine; and (4) the trial court erred in sentencing the Defendant as a career offender. Following our review, we reverse the judgments of the trial court because the trial court failed to fulfill its role as the thirteenth juror. We remand the Defendant's case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Reversed; Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. JAMES CURWOOD WITT, JR., J., filed a separate concurring opinion.

Joseph W. Fuson (on appeal), Nashville, Tennessee; Laura Clift, District Public Defender, and Joan Lawson, Assistant Public Defender (at trial), attorneys for appellant, George Washington Matthews.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Renee Erb, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

# OPINION

Officer Joel David Goodwin of the Metro Nashville Police Department testified that he was assigned to the Hermitage Crime Suppression Unit and that he was working on the night of August 30, 2004. On that night, Officer Goodwin was acting in an undercover capacity and trying "to purchase narcotics from street level dealers in areas where [they] have complaints of street level sales." He was "outfitted with a wire," which is an "audio transmitting device" that enabled other officers to hear his conversations and attempted transactions with street level dealers. In order to purchase the narcotics, he obtained money from the unit that had been photocopied. The photocopies of the money were distributed to the members of that specific operation.

At 5:20 p.m. he and Detective Olivia Wilson of the South Crime Suppression Unit drove to the parking lot of a market, which was across from the Drake Motel on Murfreesboro Road. When they "pulled into the parking lot," they saw the Defendant and asked him for "a 40," which means forty dollars worth of crack cocaine. The Defendant said he could obtain the cocaine, got into Officer Goodwin's car, and directed them to the "JC Napier Homes area, which is just off [] Murfreesboro where it turns into Lafayette." When they arrived, the Defendant got out of the car and went out of the officers' "sight." The Defendant returned and gave Officer Goodwin a "bag with a yellow rock substance, which appeared to be crack cocaine." Officer Goodwin gave the Defendant forty dollars, and the Defendant walked away. Officer Goodwin "gave the take-down signal" as the Defendant was walking away. As the Defendant was being arrested, Officer Goodwin drove away because he did not want the vehicle to be associated with the Defendant's arrest.

On cross-examination, Officer Goodwin admitted that he does not usually attempt to purchase narcotics in an undercover capacity while wearing his "court clothes." He stated that when he participated in these "buy-bust" operations, he was usually "[l]ooking for someone who [wa]s selling crack" but admitted that he also obtained narcotics from those who simply lead him to someone who was selling narcotics. He admitted that the Defendant did not hand him any drugs when he asked him for cocaine and that the Defendant took him to another location to obtain the cocaine. He admitted that, once in the car, the Defendant asked him if he had a "straight." Officer Goodwin stated that this was a common question because "they want to see that you actually [have] something to ingest the crack cocaine you're going to purchase." He could not remember if the Defendant told him that he also had a pipe. He remembered that he did have a conversation concerning the "buy money" and that the Defendant requested the money before he left the car to obtain the cocaine. Officer Goodwin refused to give him the money before he received the cocaine, and the Defendant left to obtain the cocaine. He could not remember what the Defendant told him when he left

after the transaction was completed but admitted that the transcript from the preliminary hearing reflected that the Defendant told him that he was "going to give the man money."

On re-direct examination, Officer Goodwin stated that the Defendant told him that he "was going to give [the man] some money." On re-cross examination, Officer Goodwin admitted that he did not remember the entirety of the conversation that he had with the Defendant after he was given the cocaine. He only remembered that he was attempting to keep the Defendant "close" to prevent the Defendant from leaving the area with the money before the other officers had a chance to arrest the Defendant.

Officer Ron Black of the South Crime Suppression Unit testified that he participated as an arresting officer in the undercover operation in the Defendant's case. When Officer Goodwin completed the transaction and gave the "take-down" signal, Officer Black and other officers "moved in" and arrested the Defendant. After the Defendant was arrested, Officer Black obtained the previously photocopied money, which was "laying on the ground" near where the Defendant was arrested. He also found a "glass crack pipe" in the front pocket of the Defendant's pants. On cross-examination, Officer Black stated that he monitored the transaction from his unmarked vehicle. Officer Dunn, who was in another vehicle, also participated in the Defendant's arrest.

Holly Kimbrough of the Tennessee Bureau of Investigation (TBI) testified about the procedures for handling evidence and discussed her involvement in handling some of the evidence in the Defendant's case. The State established the chain of custody for all of the evidence obtained in this case through the testimony of Officer Goodwin, Officer Black, Holly Kimbrough, and John Scott. We will not recount the substance of their testimony regarding the chain of custody because it was properly established in this case and is not an issue on appeal.

John Scott of the TBI testified that he has been employed as a forensic scientist with the TBI for four years. He tested the substance obtained from the Defendant and found that it was cocaine base and that it weighed 0.5 grams. In testing the substance, he used an infrared spectrophotometer and a gas chromatography-mass spectrometry. These instruments "produce[d] a very specific spectra," which he compared to a "library." He performed a "visual comparison to known standards and base[d] [his] comparison and identification off that match." He measured the substance using an "analytical balance, a digital balance." He said that the balance was "accurate within plus or minus .01 grams."

## ANALYSIS

### I. Due Process

The Defendant contends that the trial court should have granted his motion to dismiss his case because his due process rights were violated when approximately three years elapsed between the time of his arrest and the time of trial. The Defendant contends that this delay was not a violation of his right to a speedy trial but that it was a violation of his due process rights in accordance with article 1, sections 8 and 9 of the Tennessee Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. The State responds that this issue should be deemed waived because the Defendant failed to include a transcript of the hearing on the motion to dismiss. The State also responds that the Defendant cannot prevail on a due process claim because he cannot show that he suffered actual prejudice or that the State caused the delay to gain an advantage over the Defendant. The State further responds that the Defendant never requested a speedy trial or objected to any of the continuances and that he cannot show that he suffered any prejudice from the delay in the prosecution.

The record before us does not contain a transcript of the Defendant's hearing on the motion to dismiss his case. Without a transcript, we are unable to determine whether the trial court properly denied the Defendant's motion to dismiss. It is the Defendant's duty to prepare the record "as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues which are the bases of appeal." Tenn. R. App. P. 24(b). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993) (citing State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988)). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) (citing Vermilye v. State, 584 S.W.2d 226 (Tenn. Crim. App. 1979)). Accordingly, we conclude that this issue is waived.

## II. Thirteenth Juror

The Defendant contends that the trial court failed to fulfill its role as thirteenth juror when it approved the jury's conviction of facilitation of sale of a controlled substance of 0.5 grams or more because the testimony presented at trial failed to establish that the cocaine weighed 0.5 grams or more. The State responds that the evidence clearly established that the weight of the cocaine was 0.5 grams or more and that the trial court fulfilled its role as thirteenth juror.

Rule 33(d) of the Tennessee Rules of Criminal Procedure provides that a "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This rule "is the modern equivalent to the 'thirteenth juror rule,'

whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict." State v. Blanton, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). The rule "imposes upon [the trial court] the mandatory duty to serve as the thirteenth juror in every criminal case, and that approval by the trial [court] of the jury's verdict as the thirteenth juror is a necessary prerequisite to imposition of a valid judgment." State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). The rule does not require a specific statement on the record indicating the trial court's approval of the verdict, and in the absence of a specific statement, the trial court's order denying a motion for new trial constitutes an approval of the jury's verdict. Id. However, "when a trial court chooses to comment on the record about its thirteenth juror determination, the ruling should be clear and unequivocal." State v. Moats, 906 S.W.2d 431, 434 (Tenn. 1995). "A new trial will be required after appeal, only when the record contains statements indicating that the trial court failed to act as the thirteenth juror or misconstrued its authority under that rule." Id.

At the conclusion of the State's proof, defense counsel argued that the evidence was insufficient to sustain a conviction of facilitation of sale of 0.5 grams or more of cocaine. The trial court overruled the motion for judgment of acquittal without additional commentary. At the hearing on the motion for new trial, the Defendant argued that the evidence was insufficient to sustain his conviction of facilitation of sale of 0.5 grams or more of cocaine when the TBI expert, Mr. Scott, testified that the cocaine weighed 0.5 grams and that the margin of error rate for the scale was .01 grams. The Defendant contended that Mr. Scott's testimony proved that the "jury verdict in the case was against the weight of the evidence presented at trial." The State responded that the jury resolved the conflict of the error rate of the scale when they decided to convict the Defendant. In overruling the Defendant's motion for new trial, the trial court stated, "I think it's a question for the jury[,] and the jury did set the amount." While the trial court judge overruled the motion for new trial, his comments at the hearing indicated that he simply deferred to the jury result in deciding to overrule the motion for new trial. Accordingly, we conclude that the trial court failed to act as the thirteenth juror in the Defendant's case and that the Defendant's case should be remanded for a new trial.

### III. Remaining Issues

The Defendant's issue challenging the sufficiency of the convicting evidence is rendered moot by our reversal of the Defendant's conviction and grant of a new trial. However, we will discuss the Defendant's sentencing issue in order to facilitate further guidance in the event of a subsequent conviction and sentencing hearing following our remand of the Defendant's case.

The Defendant contends that the trial court erred in sentencing him as a career offender because the trial court improperly found fourteen prior felony convictions. The Defendant also contends that the trial court erroneously neglected to specifically state each felony and the applicable class of each felony on the record. The State responds that the issue should be waived and that we must presume that the trial court's sentencing decision was proper because the Defendant failed to include a complete record of the sentencing proceedings. Specifically, the State contends that the absence of the certified copies of the judgments of prior convictions and the presentence report hinders our review.

The Defendant was convicted of a Class C felony; therefore, in order to be sentenced as a career offender, the trial court must have found that the Defendant had "[a]ny combination of six (6) or more Class A, B, or C prior felony convictions." Tenn. Code Ann. § 40-35-108. From our review of the record, it appears that the State attempted to prove that the Defendant had one prior Class B felony conviction, five prior Class C felony convictions, five prior Class D felony convictions, and two prior Class E felony convictions. The State also intimated that the Defendant had other federal convictions and "many other misdemeanor[]" convictions. Defense counsel argued that two of the prior Class C felony convictions were convictions that should have merged pursuant to the twenty-four hour merger rule and that one of the Class C felony convictions should have been classified as a Class D felony because it was a conviction for an attempt to commit a felony. Following the testimony presented at the hearing and further argument by defense counsel, the State said,

> I have no objection to the [c]ourt - - I don't know how to put this: I think [the Defendant] is a career offender, but it would skip a lot of hullabaloo to give him 15 [years] range three to serve.

In sentencing the Defendant as a career offender, the trial court found that the Defendant had "twelve previous felony convictions, plus two federal firearms convictions which would classify as felonies" and stated, "It is no question in my mind that this gentleman classifies as a career offender." The trial court did not make any findings regarding defense counsel's argument that two of the convictions should have merged or that one of the convictions should be treated as a lesser class of felony.

Included in the record on appeal is the State's notice to seek enhanced punishment, which listed the previous convictions along with their case numbers and other pertinent information. The notice does not include any of the offense dates. Additionally, the copies of the certified judgments and the presentence report are not included in the record on appeal. Without access to the presentence report and the certified judgments of conviction, we are unable to determine whether the trial court's sentencing decision was supported by the record. See Tenn. Code Ann. § 40-35-210; State v. Carter, 254 S.W.3d 335, 344-45 (Tenn.

-6-

2008). It is the Defendant's duty to prepare the record "as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues which are the bases of appeal." Tenn. R. App. P. 24(b). "Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." Ballard, 855 S.W.2d at 560-61 (citing Roberts, 755 S.W.2d at 836). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." Oody, 823 S.W.2d at 559 (citing Vermilye, 584 S.W.2d at 226).. Had the Defendant not been granted a new trial, this issue would have been waived because defense counsel failed to present an adequate record on appeal.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are reversed. The Defendant's case is remanded for a new trial.

_____
D. KELLY THOMAS, JR., JUDGE