# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 26, 2011

## STATE OF TENNESSEE v. JOSHUA W. EADS

**Direct Appeal from the Criminal Court for Union County**
**No. 2008-CR-3659      E. Shayne Sexton, Judge**

**No. E2010-01518-CCA-R3-CD - Filed September 26, 2011**

The defendant, Joshua W. Eads, was convicted by a Union County jury of facilitation of burglary, a Class E felony; theft of property under $500, a Class A misdemeanor; and theft of property over $1000, a Class D felony. Following a sentencing hearing, he was sentenced to an effective term of six years in the Department of Correction. On appeal, the defendant asserts that the trial court erred in: (1) failing to grant his motion for judgment of acquittal because the evidence was legally insufficient to establish that the defendant committed the instant crimes; and (2) charging the jury with the lesser included offense of criminal responsibility for facilitation of burglary because the evidence indicated that the defendant did not promote or assist in the crimes. Following review of the record, we find no error and affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, J., and DAVID H. WELLES, Sp. J., joined.

Thomas J. Tabor, Jr., Tazewell, Tennessee, for the appellant, Joshua W. Eads.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William Paul Phillips, District Attorney General; and Tracy T. Jenkins, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### Procedural History

The charges against the defendant arose from his early morning activities in April of 2008. The defendant and two friends, Christopher D. Greene and David Scott Combs,

were involved in the theft of a motorcycle and the breaking into of D & A Market and stealing cigarettes. Based upon these actions, the defendant, along with the other two men, was indicted by a Union County grand jury for: (1) burglary of D & A Market; (2) theft of property from D & A Market valued over $500 but less than $1000; (3) theft of property belonging to Jackie Mozingo, valued over $1000; and (4) theft of property belonging to Winston Eads, valued under $500. Prior to the beginning of the defendant's trial, his two co-defendants entered guilty pleas with the State. Immediately prior to the beginning of the defendant's trial on December 3, 2009, the State dismissed the charge in Count four of the indictment.

At trial, the State presented the testimony of Detective Steve Rouse of the Union County Sheriff's Department who investigated these crimes. Detective Rouse indicated that the locations of the two crimes were approximately one mile apart and, further, that the defendant was known to live in the area.

The details of what occurred that night were established primarily from the testimony of co-defendant David Scott Combs. According to Mr. Combs, on the night in question, he, Christopher Green, and the defendant were "riding around and drinking" in a Dodge van. At some point, the group picked up Gary Brantley, who remained with them for a short while. The group eventually took Brantley home, and the defendant purchased several Klonopin pills from him. According to Combs, each of the three remaining men took pills and continued to drink beer.

As they were driving around, the defendant told the other men that he wanted to steal Jackie Mozingo's motorcycle. At first, the two men refused, and the defendant was dropped off in the area near Mozingo's home. Later, the pair returned and found the defendant, who had been unable to get the motorcycle himself. Green exited the van and went to assist the defendant. Combs drove around for a short time and then returned to pick up the two men. He helped them load the approximately 300-350 pound bike into the rear of the van.

According to Combs, the group then proceeded to D & A Market, where Combs parked the van behind the store. He testified that the defendant and Green exited the van and proceeded around the side of the building out of his line of vision. Shortly thereafter, the two men returned and jumped in the van, yelling at Combs to leave because the alarm to the store had been triggered. Combs testified that Green had four cartons of cigarettes in his possession, which the men shared. Thereafter, Combs stated that he drove to his parents' home and hid the motorcycle for the night. On the following day, he sold the bike and split the proceeds with the defendant and Green.

The State also called Jackie Mozingo to testify regarding the theft of his motorcycle.

He testified that the bike was kept in a shed on his mother's property, which was located about one mile from the defendant's house. According to Mozingo, he traded for the bike about a week and a half prior to the theft. He stated that he had traded for a restored Ford pickup which was valued at approximately $2000. Mozingo also testified that on two or three occasions, the defendant had inquired about purchasing the motorcycle from him. He related one specific instance of this occurring on the day before the theft.

Mozingo further testified that, early in the morning, he discovered that the bike was missing. He noted that the wheels on the bike could not be turned because the steering was locked and that it would have taken two to three people to carry the bike as it weighed between 300 and 400 pounds. In the driveway, he found a peg which had been broken from the motorcycle, as well as an oil spot where the bike had apparently been dropped.

On cross-examination, Mozingo acknowledged that he had not yet obtained a license tag for the motorcycle. He also testified that, after the motorcycle was stolen, he had thrown away the title and keys for it because he did not believe that he would ever get it back.

The State also called Dale Williams, the owner of D & A Market, who testified that he was awakened in the early morning hours when the store's burglar alarm was activated. According to Williams, when the alarm was triggered, it notified him at his home and notified the police. Williams immediately went to the store where he discovered that a window had been broken and that four cartons of cigarettes had been taken.

The State also called Gary Brantley, who testified that he, the defendant, and the two co-defendants had indeed been driving around drinking on the night in question. He also confirmed that he had been taken home earlier and that he sold Klonopin pills to the defendant. Additionally, Brantley testified that just prior to trial, the defendant had informed him not to worry about the subpoena he had received ordering him to testify at the defendant's trial. According to Brantley, the defendant advised him that no one who had been subpoenaed was going to attend the trial.

The defendant took the stand in his own defense and also called Carolyn Brantley as a witness. Ms. Brantley stated that she lived across the road from D & A Market and that, at approximately 11:00 to 11:30 p.m. on the night in question, she heard voices outside the store. She also reported seeing a van drive by and then park behind the store. She related that she again heard voices from beside the store and then saw a man come to the front of the store and break the store's window. In her testimony, Ms. Brantley was adamant that the person she saw breaking the glass was not the defendant, whom she had known all his life. On cross-examination, she acknowledged that she had seen only one of the men but that she heard two men talking and saw another man driving the van.

The defendant testified as well. He admitted that he was riding around with the co-defendants on that night. He also acknowledged that they had picked up Gary Brantley and that he had also purchased nerve pills from Mr. Brantley. However, according to the defendant, after the group left Mr. Brantley, his two co-defendants had taken him directly home and that he had gone to bed. He adamantly denied any involvement with the burglary or either theft. The defendant testified that Combs' testimony was false, and he speculated that it was given because the Combs family was upset with the defendant after a break up with Combs' sister.

In rebuttal, the State called Ozella Brantley, wife of Gary Brantley. She also recalled a night in April of 2008, when her husband had gone out with the defendant and two other men at approximately 9:30 p.m. She recalled her husband being brought home and seeing him "passed out" on the couch. Ms. Brantley also stated that at 12:17 a.m. that night, she was awakened by the defendant pounding on her door and asking to speak with Mr. Brantley.

After hearing the evidence, the defendant was convicted of the lesser offense of facilitation of burglary, theft under $500, and theft over $1000. He was subsequently sentenced to concurrent sentences of six years, three years, and eleven months and twenty-nine days. Following the denial of his motion for new trial, the defendant filed the instant appeal.

**Analysis**

On appeal, the defendant has raised two issues for our review. First, he challenges the trial court's decision to deny the motion for judgment of acquittal based upon sufficiency of the evidence. Second, he asserts that the court erred in charging the jury with the lesser included offense instruction for facilitation of burglary.

## I. Motion for Judgment of Acquittal/Sufficiency of the Evidence

On appeal, the defendant first asserts that the trial court erred by denying his motion for judgment of acquittal because he contends that the evidence was insufficient to show beyond a reasonable doubt that he committed the crimes. We note at this juncture that a motion for judgment of acquittal requires that the trial court determine the sufficiency of the evidence. Tenn. R. Crim. P. 29(a). The standard of review for a motion for judgment of acquittal is the same as that utilized when analyzing the sufficiency of the convicting evidence. *State v. Blanton*, 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996). Thus, we treat the defendant's issue purely as a challenge to the sufficiency of the evidence.

When an accused challenges the sufficiency of the convicting evidence, the standard

of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original); *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010); *see also* Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith,* 24 S.W.3d 274, 279 (Tenn. 2000); *see also State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Questions involving the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). With respect to circumstantial evidence, our supreme court recently overruled *State v. Crawford*, 470 S.W.2d 610 (Tenn. 1971), and its requirement that, to prove a defendant's guilt based on circumstantial evidence alone, the State must present proof "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 380-81 (Tenn. 2011). The court held that direct and circumstantial evidence should be treated the same way in evaluating sufficiency of the evidence challenges. *Id*.

The defendant stands convicted of facilitation of burglary and theft of property under $500 for the crimes at D & A Market. He was also convicted of theft of property over $1000 for the crime of stealing Jackie Mozingo's motorcycle. Tennessee Code Annotated section 39-14-402(a)(1) (2010) states that "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault. . . ." Tennessee Code Annotated section 39-11-403(a) (2010) provides that "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [section] 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tennessee Code Annotated section 39-14-103 states that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective

consent."

With regard to the D &A Market crimes, the defendant contends that the State's evidence failed to establish that he was an active participant and, further, that the defendant's own evidence proves he was not present at the burglary. In support of this argument, he relies upon the testimony of Carolyn Brantley, who testified that the person she saw break into the store was not the defendant. He also notes his own trial testimony proclaiming his innocence and the State's failure to present any physical evidence linking him to the crime scene. With regard to the theft of the motorcycle, the defendant attacks the testimony of the victim to support his sufficiency argument. He contends that the State failed to establish that he committed the theft and also disputes the verdict as to the value of the motorcycle. The defendant asserts that "the value and ownership of the motorcycle was and still is in question," citing the victim's testimony that he failed to register the motorcycle, have it appraised, or apply for a lost title.

As an initial matter, we note that most of the defendant's arguments rest upon challenges to the credibility determinations made by the jury or to the weight to which they assigned the evidence presented. It has been noted on multiple occasions that these issues are the province of the jury, not this court. This court will not reweigh or re-evaluate the evidence. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). All the evidence, including the defendant's denial of his involvement, was heard by the jury in this case. Based upon their verdict, the jury clearly rejected the defendant's version of events and accredited the State's witnesses. Again, we do not disturb those findings.

The State recognizes that the theory of their case was largely based upon co-defendant Combs' testimony. The State further acknowledges that the convictions cannot be solely based on the uncorroborated testimony of an accomplice. *State v. Robinson*, 971 S.W.3d 30, 42 (Tenn. Crim. App. 1997). Nevertheless, the State notes that Tennessee law requires only a modicum of evidence in order to sufficiently corroborate such testimony. *State v. Billy D. Sizemore*, No. M2009-01827-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 21, 2001). "[T]he question of whether an accomplice's testimony has been sufficiently corroborated is for the jury to determine." *Id*. The State contends that sufficient corroborating proof was presented.

Following review, we conclude that the State's evidence is sufficient to support the D & A Market crimes. Combs' testimony was that he drove to D & A Market and that the defendant and Green exited the van. According to Combs, shortly thereafter, the two re-entered the van, telling him to drive because the alarm had been triggered by the breaking window. Combs also testified that Green had four cartons of cigarettes, which the three men divided among themselves.

-6-

This testimony is corroborated by that of victim Williams, who indicated that he was awakened in the early morning hours by the sound of the store's security alarm. He arrived at the store to find a broken window and four cartons of cigarettes missing. Despite his assertion to the contrary, Carolyn Brantley's testimony actually corroborates that of Combs. While she testified that the person who broke into the store was not the defendant, she acknowledges the presence of a second man, whom she did not see, at the corner of the store. This fact supports Combs' testimony that the defendant and Green exited the van and approached the building. Gary Brantley's testimony places the defendant with his co-defendants shortly before commission of the crimes and corroborates Combs' testimony of the defendant's actions of buying pills from Gary Brantley. We find this evidence to sufficiently corroborate the testimony of the co-defendant.

Likewise, we also conclude that the proof was sufficient to support the conviction for the theft of the motorcycle. Co-defendant Combs testified that the defendant told both him and Green that he wanted help stealing the bike from victim Mozingo's home. Eventually, Combs dropped the two men off, returned to pick them up, and helped load the 300-350 pound motorcycle into the van. According to Combs, he hid the bike, sold it the next day, and divided the money with the defendant and Green.

Again, this testimony was corroborated by additional proof. Victim Mozingo testified that his motorcycle was stolen from his mother's shed on the night in question. He further testified that the defendant, whom he had previously known, had inquired about purchasing the motorcycle, even stopping at the house on the day before the theft. The victim also testified that because the steering was locked, the bike would have to be pushed straight and would weigh 300-400 pounds, corroborating Combs' testimony.

We further conclude that the defendant's challenge to proof of ownership and value is misplaced. The fact that the motorcycle was not registered prior to the theft is not determinative of ownership, as Mozingo testified he had only traded for the motorcycle a week and a half earlier. Mozingo further testified that he had traded a restored Ford pickup truck worth approximately $2000 for the motorcycle. He also testified as to the reasons he did not file for a lost title. The jury heard all this evidence, including defense counsel's extensive cross-examination, on these issues. The ownership and fair market value of the property stolen are questions of fact for the jury. *State v. Charles Cox*, No. W2010-00129-CCA-R3-CD (Tenn. Crim. App. at Jackson, Dec. 13, 2010). The defendant is not entitled to relief.

## II. Jury Instruction

Next, the defendant contends that the court erred in charging the jury with the

instruction for the lesser included offense of criminal responsibility for facilitation of burglary. While acknowledging that this, in fact, is a lesser included offense of burglary, *See State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999), the defendant asserts it was not properly charged here. He relies upon language from *State v. Robinson*, 146 S.W.3d 469 (Tenn. 2004), to support his contention:

> However, this does not mean that it must be charged in every case. Considering the evidence in the light most favorable to the existence of the lesser-included offense, if the evidence does not support the notion that the Defendant merely furnished substantial assistance, without intending to promote or assist the commission of the offense, and no reasonable jury could have concluded that the Defendant had the knowledge required for facilitation while at the same time lacking the intent required for criminal responsibility to commit the offense, then the Defendant is either guilty by virtue of criminal responsibility or is innocent. In such a case, facilitation does not have to be charged as a lesser-included offense.

The complained-of instruction given to the jury by the trial court is as follows:

> Any person who commits the offense of facilitation of a felony is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: Number one, that the defendant knew that another person intended to commit the specific felony of burglary but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense; and number two, that the defendant furnished substantial assistance to that person in the commission of the felony; and number three, that the defendant furnished such assistance knowingly.

We disagree with the defendant's contention that his charge was not warranted. The record establishes, although it must be reached through inferences, that Green and the defendant proceeded to the side of the building at D & A Market. They were heard having a discussion according to the testimony of Carolyn Brantley. Next, according to the testimony of Brantley, Green, not the defendant, proceeded to enter the store. Based upon these facts, it is reasonable to infer that the defendant knew of Green's plan to burglarize the store, did not participate himself or have the intent to do so, but did provide assistance by serving as a lookout. We conclude that the facts minimally support the charge. Once the charge was given, it became a question for the jury. From the evidence presented, a reasonable jury could have concluded that the defendant, at least, furnished substantial assistance to Green, who intended to commit the offense of burglary.

## CONCLUSION

Based upon the foregoing, we affirm the judgments of conviction.


_____

JOHN EVERETT WILLIAMS, JUDGE