IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 4, 2019

**STATE OF TENNESSEE v. WILLIAM PRICHARD**

**Appeal from the Circuit Court for Hardeman County**
**No. 17-CR-22      J. Weber McCraw, Judge**

_____

**No. W2019-00270-CCA-R3-CD**

_____

Defendant, William Prichard, was convicted by a jury of aggravated assault resulting in death. The trial court sentenced Defendant to a term of fifteen years. On appeal, Defendant argues that the evidence was insufficient to sustain his conviction of aggravated assault and that Defendant should be granted a new trial because the finding of the jury is against the weight of the evidence presented, and the trial judge failed to act as the thirteenth juror. After conducting a full review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT L. HOLLOWAY, JR., JJ., joined

Ross Mitchell, Savannah, Tennessee, for the appellant, William Prichard.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

Defendant was indicted by the Hardeman County Grand Jury of one count of aggravated assault resulting in death. At trial, which commenced on January 9, 2018, the following facts were adduced.

On August 26, 2016, Defendant and the victim, William Hancock, were inmates at the Hardeman County Correctional Facility. Steve Young, also an inmate, testified that he and Mr. Hancock were standing near the microwaves in their pod. Defendant came down the stairs yelling "I'm going to get you." Mr. Young stated that he took notice and stepped in between Defendant and Mr. Hancock, facing Defendant. Defendant put his hand on Mr. Young's left shoulder, jumped over Mr. Young, and punched Mr. Hancock in the face with his right hand. Mr. Young testified that when he turned around, Mr. Hancock was lying on the floor. Mr. Young gave a statement to the correctional facility officials at the time and identified Defendant as the person who hit Mr. Hancock. Mr. Young did not recognize Defendant in the courtroom but was able to recognize him from a photograph taken closer to the time of the offense.[1]

Mark Gallady, another inmate, testified that he witnessed Mr. Young jumping in between Mr. Hancock and Defendant. Mr. Gallady stated that he saw Defendant hit Mr. Hancock in the face and that Mr. Hancock "fell straight back, [and] smacked his head right on the floor." Mr. Gallady testified that Mr. Hancock had not been acting strangely or depressed in the days leading up to the incident, that "[h]e seemed like the same old guy we was used to being around." Mr. Gallady stated that it was a matter of moments before the correctional officer arrived and directed all inmates to their cells. The inmates were placed on lockdown. A nurse arrived a couple of minutes later. Mr. Gallady also testified that prior to the incident, the floor was dry and did not have any puddles of water. Mr. Gallady identified Defendant in the courtroom as the individual who hit Mr. Hancock.

Correctional Officer Cassie Graham testified that she was in the "JDF Sally Port" when the attack occurred and that she was on the scene of the incident within thirty seconds. Officer Graham did not witness Defendant hit Mr. Hancock. Officer Graham found Mr. Hancock lying on the ground and then proceeded to lockdown the other inmates to assess the situation. While getting the inmates into their cells, Officer Graham testified that Defendant told her that "[he] done [sic] it." Officer Graham testified that there were cameras in the pod, but she did not know if there was any video footage of the incident.

Kelsey Gates, an investigator at the Hardeman County Correctional Facility, testified that she became involved in the investigation because it was likely that an inmate was going to die as a result of injuries sustained in an incident. Officer Gates developed Defendant as a suspect during her investigation. Officer Gates read from a statement that she took from Defendant:

---

[1] At the time of trial, Defendant had longer hair that had gone gray, had grown a beard, and wore glasses. At the time of the offense, Defendant had no beard, his head was shaved, and he did not wear glasses.

When we came out of chow we had words. We were pushing each other and he slipped in the water by the microwave and fell. We were arguing about him pushing past me in chow when we left.

Officer Gates interviewed every inmate in the pod and concluded that Mr. Hancock was hit in the face by Defendant and that Mr. Hancock did not slip on water after being pushed. Officer Gates indicated that no correctional officers witnessed the event and that the event was not captured on video.

Ollie Herron, a nurse practitioner at Hardeman County Correctional Facility, was certified as an expert in the field of general medical practice at the trial. She testified that she received a call from her subordinate, Ms. McCarty, a registered nurse at the facility, related to the incident with Mr. Hancock. Ms. Herron gave Ms. McCarty instructions to "stabilize the patient as much as [they] could, provide oxygen, start an IV, [and] call EMS." Based on Mr. Hancock's medical report, Ms. Herron testified that Mr. Hancock was found lying on the floor with blood around his head. Mr. Hancock was then transferred to medical on a stretcher. He had several head injuries, including a three-inch long cut that was one-quarter inch deep. His right eye was swollen and had begun to turn blue. Mr. Hancock was awake but not responding to commands and had thrown up blood twice. Ms. Herron testified that Mr. Hancock took Coumadin, a medication that would have caused him to bleed more than other individuals. When the emergency medical personnel arrived, they took Mr. Hancock to the hospital in Jackson, Tennessee, due to the severity of his injuries. Based on her medical knowledge, Ms. Herron concluded that Mr. Hancock died from the head wounds.

Dr. Tom Deering, a forensic pathologist, testified that he performed the autopsy on Mr. Hancock. Based on Dr. Deering's findings, Mr. Hancock suffered from blunt force trauma injuries to his head. Dr. Deering testified that Mr. Hancock had not simply collapsed with his legs buckling but that he fell like a tree. There was bleeding in two different areas of Mr. Hancock's brain. Dr. Deering testified that force of the injury fractured small bones around Mr. Hancock's eyes and caused his eyes to blacken. Mr. Hancock suffered from brain swelling that caused the brain to herniate, and the hernia damaged the central structures of the brain and caused Mr. Hancock's death. Dr. Deering testified that Mr. Hancock "broke his skull due to a fall." Dr. Deering stated that he had seen almost this exact same fact pattern happen numerous times during his career.

Defendant testified that he had nothing against Mr. Hancock and that they talked and watched television together. Defendant stated that Mr. Hancock had been acting depressed before the incident. Defendant testified that on the day of the incident, someone grabbed his leg and almost tripped him. He said he did not know if it was Mr. Hancock, but Defendant told Mr. Hancock, "I told you about putting your hand on me"

and "just leave me alone." Defendant testified that Mr. Hancock came towards him while they were standing near the microwave. Mr. Hancock threw a cup of coffee in front of Defendant. Defendant stated that Mr. Hancock then bent his head backwards and "dropped his head in the floor." Defendant testified that Mr. Hancock tried to kill himself by falling on the floor and "set [Defendant] up with an aggravated assault charge." Defendant stated that he did not tell Officer Graham that he had done it. Defendant testified that Mr. Young, Mr. Gallady, Officer Graham, and Ms. Gates were all lying.

The jury convicted Defendant of aggravated assault resulting in a death. The trial court sentenced Defendant to fifteen years as a career offender. Defendant filed a timely motion for new trial, and the trial court denied the motion. It is from this conviction that Defendant now appeals.

*Analysis*

*I. Sufficiency of the Evidence*

Defendant argues that the evidence presented at trial was insufficient to support his conviction for aggravated assault. The State argues the evidence was sufficient to support the jury's verdict.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial

evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Aggravated assault as charged in the indictment occurs when a person intentionally or knowingly commits an assault and the assault results in the death of another. T.C.A. § 39-13-102(a)(1)(A)(ii). A person commits assault when the person intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly causes another to reasonably fear bodily injury.. T.C.A. § 39-13-101(a)(1)-(a)(2).

The evidence presented in this case, in the light most favorable to the State, shows that Defendant jumped over Mr. Young and punched Mr. Hancock in the face, causing him to fall back "like a tree." Two eyewitnesses, Mr. Young and Mr. Gallady, testified to the assault. It is undisputed that Mr. Hancock hit his head on the floor and died from the injuries he sustained. Even though Defendant testified that Mr. Hancock deliberately fell to harm himself, the jury, by its verdict, accredited the testimony of Mr. Young and Mr. Gallady. Because a rational juror could determine that Defendant punched Mr. Hancock, causing Mr. Hancock to fall, hit his head, and die, the evidence is sufficient to sustain Defendant's conviction.

## II. Thirteenth Juror

Defendant also argues that the jury and the judge, as the thirteenth juror, reached a factual determination that is contrary to the weight of the evidence presented at trial and that Defendant is due a new trial. The State argues that the evidence presented at trial is sufficient to support the verdict.

Tennessee Rule of Criminal Procedure 33(d) provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This rule "'imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case'" and makes "'approval by the trial judge of the jury's verdict as the thirteenth juror . . . a necessary prerequisite to imposition of a valid judgment.'" *State v. Biggs*, 218 S.W.3d 643, 653 (Tenn. Crim. App. 2006) (quoting *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995)). "'[T]he trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict.'" *Id*. (quoting *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996)). Our supreme court has explained as follows:

> In evaluating the legal sufficiency of the evidence, the judge determines whether all the necessary elements of the offense have been made out, whether the defendant's identity has been established and whether the proof demonstrates the existence of a valid defense. In doing so, the court is

required to view the evidence in the light most favorable to the verdict, giving the prosecution the benefit of all inferences reasonably to be drawn from the evidence. . . .

An inquiry into the weight of the evidence is entirely different. The trial judge does not have to view the evidence in the light most favorable to the prosecution; he may weigh the evidence himself as if he were a juror and determine for himself the credibility of the witnesses and the preponderance of the evidence.

*State v. Ellis*, 453 S.W.3d 889, 899 (Tenn. 2015) (quoting *State v. Johnson*, 692 S.W.2d 412, 415 (Tenn. 1985) (Drowota, J., dissenting)).

Because "[a]ppellate courts are ill-suited . . . to assess whether the verdict is supported by the weight and credibility of the evidence . . . , the accuracy of a trial court's thirteenth juror determination is not a subject of appellate review." *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995). Although the duty is mandatory, the trial court is not required to make an explicit statement on the record that it has fulfilled its duty to act as thirteenth juror, and appellate courts may presume that the trial court has approved the verdict when it overrules a motion for new trial without comment. *Biggs*, 218 S.W.3d at 653 (citing *Carter*, 896 S.W.2d at 122; *State v. Brown*, 53 S.W.3d 264, 274 (Tenn. Crim. App. 2000)). "[O]nly when the record contains statements indicating that the trial court failed to act as the thirteenth juror or misconstrued its authority under that rule" may an appellate court grant a new trial. *Moats*, 906 S.W.2d at 435.

At the hearing on the motion for a new trial, the trial court found "that the jury acted appropriately in rendering its verdict. The [c]ourt did accept the verdict at the time and continues to accept it." Therefore, the trial court fulfilled its duty as thirteenth juror, and Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

- 6 -